## THE STATE v. OSBORNE.

1. **Criminal Law**: LARCENY: IDENTITY OF PROPERTY. To sustain a conviction for larceny based upon the possession of the stolen property by the defendant, the identity of the property should be satisfactorily established.

2. **Instructions**: PERTINENCY TO EVIDENCE. Instructions should be based upon the evidence, and pertinent thereto.

*Appeal from Greene District Court.*

WEDNESDAY, MARCH 21.

At the November Term, 1874, of the Greene District Court the defendant was indicted for the larceny of a double set of harness, the property of Joshua Payne, on the night of the 27th day of April, 1874, from the stable of said Payne, in Greene county. The defendant pleaded not guilty, and upon his motion the cause was continued. At the April Term, 1875, the cause was tried, and the jury disagreed. At the November Term, 1875, the cause was again tried; a verdict of guilty was returned, and the value of the property was assessed at $21. The motion for new trial was overruled, and

the defendant was sentenced to the penitentiary for one year. The defendant appeals.

*Jackson & Head*, for appellant.

*M. E. Cutts, Attorney General*, for the State.

Day, Ch. J.—We are satisfied that the evidence is utterly insufficient to support the verdict, and that for that reason a new trial should have been granted. Payne's harness was stolen on the night of the 27th of April, 1874. On the 22d day of July, 1874, the defendant was arrested in Wilson county, Kansas, and had in his possession a set of harness which Payne claims are the ones stolen from him.

1.   The harness found in defendant's possession were produced at the trial. Their identity with those stolen from Payne is not satisfactorily established. It is true Payne testifies generally that the harness are his, and he undertakes to point out particular rings and buckles which he swears are his. But upon further examination he states that "when the harness were stolen there were three cockeyes sewed in, and one riveted in. When I next saw them at preliminary examination there was a change; they answered my harness in every particular except the cockeyes were all solid, none riveted in. These bits are not mine; they are not the same bits that were in them when stolen; there are other parts of the harness that don't answer the description of the ones I had stolen. This pole strap is not mine, and never was; there are rivets in them, mine had none; the other I think is mine, but the rivet has been put in since they were stolen. This buckle was not broken when they were taken away. I judge these belly bands are not mine; this one looks more natural than the other; they look as though made by the same person; I believe they have been changed since the last term of court; they have been changed since I last saw them; I don't believe I ever saw them before; I am positive they are not mates. The belly bands on my harness are mates. When my harness was taken away neither one of the belly bands was scarred or chewed." The proof is

*1. CRIMINAL law: larceny: identity of property.*

positive that no change had been made in the harness since the last term of court, and that one of the belly bands is badly chewed. It appears, then, by the admissions of Payne that the harness stolen from him differ in five respects from those found in defendant's possession; the bits are not the same; the pole straps are not the same; the belly bands are not the same; one of the cockeyes is not the same, and there is a broken buckle which was sound. This certainly is not very satisfactory evidence of identity.

2. The defendant's family resides in Wilson county, Kansas. For four months prior to the date of the alleged larceny defendant had lived with his brother-in-law, J. T. Bentley, about one-half mile from Payne's. On the evening of the 27th of April, the defendant was at Bentley's house about sun down. After supper he and Bentley went to Corbin's, a distance of one-fourth of a mile. They left there about ten o'clock and returned to Bentley's, where they remained about two hours. Bentley helped defendant carry his trunk thence to the depot, a distance of two miles, where they arrived about one o'clock in the morning. At 3:44 A. M. defendant went west to Council Bluffs, on his way home to Kansas. The trunk was packed at Bentley's house, and no harness were in it. The night operator saw defendant get on the train, but saw no harness in his possession. The defendant's wife testifies that he arrived at home near Fredonia, in Kansas, 16 or 18 miles from the railroad, about the last day of April, afoot, and brought no baggage with him. His trunk came in about a week; there were no harness in it.

3. Charles Sweeney, an attorney at law of Fredonia, and Stewart Osborne, a son of defendant, testify that they saw defendant buy a set of harness at an auction sale at Chaunte, Kansas, 28 miles from Fredonia, in May, 1874, and pay $18.35 therefor. Sweeney, at Osborne's request, examined the harness, and told him what he thought of them, before they were bought. Both these witnesses fully and satisfactorily identify the harness bought at Chaunte as the same produced upon the trial, and claimed by Payne. In addition to all this it is proved that the defendant's character is good, and that

his dealings have always been honest. There is absolutely no proof that defendant committed the offense charged, aside from the supposed identity of the property found in his possession with that stolen. It seems marvelous that the jury should have found the defendant guilty under the proof adduced.

II. The court gave the jury the following instruction: "6. But if you should be satisfied by all the circumstances surrounding the case that the sale of the harness at auction, if such sale actually took place, was a mere subterfuge resorted to by the defendant for the purpose of giving an appearance of honesty to his possession of the harness, while in fact he had placed them in the hands of the auctioneer to be sold, his purchase at such sale would not rebut or overcome the presumption of guilt which arises from his possession of the property after the larceny. But you ought not to conclude that his purchase at the auction, if he made such purchase, was not a *bona fide* transaction except upon satisfactory proof; a mere suspicion that such is the case would not be sufficient."

2. INSTRUCTIONS: pertinency to evidence.

The former part of this instruction ought not to have been given, for there is not a scintilla of evidence that the auction sale was a subterfuge to keep up appearances of honesty. If it should be held that the latter part of the instruction cures the error in the former part, then the verdict should have been set aside as not supported by the evidence, for there is no conflict in the evidence that the auction sale occurred, and under the evidence submitted there can be nothing more than a mere suspicion that it was not *bona fide*.

REVERSED.