The Bank of Monroe v. The Anderson Bros. Mining and Railway Co.

THE BANK OF MONROE v. THE ANDERSON BROS. MINING & RAILWAY CO. ET AL

1. **Instructions:** MUST BE SUPPORTED BY EVIDENCE. An instruction in this case *held* to be erroneous, because thereby the court submitted to the jury for their determination a question of fact material to the case, on which there was no evidence.

2. **Principal and Surety:** DUTY OF CREDITOR TO INFORM SURETY OF FACTS RELATING TO THE RISK. If a surety, before becoming such, applies to the creditor for information relating to the risk about to be assumed, the creditor, if he answers at all, must disclose all the facts which he knows material to the inquiry; and he can do nothing to deceive or mislead the surety without vitiating the agreement. Whether the creditor is bound, on his own motion, to disclose to one about to become a surety facts within his knowledge increasing the risk, depends on the circumstances of the case. If there is nothing in the circumstances to indicate that the surety is being misled or deceived, or is ignorant of facts materially affecting the risk, the creditor is not bound to seek him out and inform him of the facts; but if he knows, or has good grounds for believing, that the surety is being deceived or misled, or has entered into the contract in ignorance of facts materially increasing the risk, and he knows of such facts, and has an opportunity to disclose them to the surety before accepting the obligation, he must do so, or, for his want of fair dealing in this respect, the surety may afterwards avoid the contract. See opinion for authorities collated by REED, J.

3. ——: FRAUD ON SURETY: AVOIDANCE OF BY PAYEE OF NOTE: BURDEN OF PROOF. Where the signature of a surety to a promissory note is obtained by the fraud of the principal, the burden of proof is upon the payee of the note, before he can recover, to show that he took it without knowledge of the fraud. Compare *Lane v. Krekle*, 22 Iowa, 399, and *Union National Bank v. Barber*, 56 Id., 559.

*Appeal from Jasper Circuit Court.*

WEDNESDAY, APRIL 8.

ACTION on a promissory note executed by defendants to one Tunis Schenck, and by him assigned to plaintiff. The Anderson Brothers Mining & Railway Company made no defense. Defendant Gifford answered, admitting the execution of the note, but alleging that he signed it only as a surety, and that his signature thereto was obtained by fraud, and that the con-

tract was void for that reason.   He alleges that at the time the note was executed Schenck, the payee named therein, was president of the bank of Monroe, and one R. C. Anderson was cashier of said bank; that said Anderson was also a stockholder and manager of the Anderson Brothers Mining & Railway Company; and that, while acting as such cashier, he had taken and appropriated a very large sum of money belonging to said bank, either to his own use or the use of said mining and railway company, in which transaction he was guilty of the crime of embezzlement; that both he and the mining and railway company were insolvent; that these facts were known to the bank and its officers, and that said officers thereupon threatened to criminally prosecute Anderson for said embezzlement, if the money so taken was not in some manner secured or returned to the bank; that thereupon the bank and Schenck and Anderson and the mining and railway company conspired together to cheat and defraud defendant; the bank and Schenck agreeing, for the purpose of bolstering said Anderson up, and giving him a false and fictitious standing and credit, to conceal said defalcation, and the insolvency of Anderson and the mining and railway company, and to nominally retain Anderson as cashier of the bank, and to conceal the fact of his indebtedness and that of the mining and railway company to the bank, and the fact of the existence of certain mortgages given by Anderson on his property to secure a portion of the indebtedness, and the purpose for which the money which he desired to borrow was wanted; and that Anderson agreed also to conceal these facts, and that he would procure the signature of defendant Gifford, and other responsible parties, to promissory notes, and turn the same over to the bank in payment of said indebtedness; and that there was an agreement between the parties that if Anderson procured such notes and turned them over to the bank he should not be prosecuted for said embezzlement; and that, in pursuance of this agreement, the bank and its officers did conceal the facts of said embezzlement, and the

indebtedness and the insolvency of said parties, and the exis-
tence of said mortgages, and did nominally retain Anderson
as their cashier, and thereby gave him a false and fictitious
character and standing; and that Anderson thereupon applied
to defendant to sign the note sued on as surety, and, to induce
him to sign it, represented that he desired to borrow $2,500
from plaintiff, to be used in starting up his coal mine at
Knoxville Junction; that said mine was ready to commence
business, and that he wanted the money to use in that busi-
ness; also that he was practically out of debt, and his prop-
erty was unincumbered, and that he had $7,000 of stock in
the plaintiff bank, and that he was solvent; and that the
Anderson Brothers Mining & Railway company, the prin-
cipal maker of said note, was a copartnership, consisting of
himself and his brother, J. Q. Anderson; that these represen-
tations were all false, and were known by Anderson to be
false when he made them, and were made by him with intent
to defraud and cheat defendant; and that defendant relied
upon said representations and believed them to be true, and
was induced thereby to sign said note as surety; and that
plaintiff and its officers well knew the means by which his
signature to said note had been obtained when they accepted
the same.    There was a verdict and judgment for defendant,
and plaintiff appeals.

*Winslow & Varnum* and *J. Kipp & Son*, for appellant

*J. F. Lacey* and *A. Clark*, for appellees.

REED, J.—The evidence given on the trial shows that R.
C. Anderson was cashier of the plaintiff bank from its organi-
zation in 1877 to the 27th of January, 1883.    He was also a
stockholder and the business manager of the Anderson
Brothers Mining & Railway Company, a corporation which
was engaged in developing a coal mine.    He was also a member
of the copartnership of Anderson Brothers, which consisted
of himself and his brother, J. Q. Anderson.    During the year
1881, he and the copartnership of Anderson Brothers became

indebted to the bank to the amount of more than $14,000 for money advanced. More than one half of this indebtedness was contracted without the knowledge of the directors of the bank. When the members of the directory learned of the indebtedness, a meeting of the directors was held, at which it was agreed that an additional loan of $5,000 should be made to him, and that he should secure the whole amount of the indebtedness by a pledge of stock which he held in the bank, of the value of over $7,000, and a mortgage on real estate, and this agreement was carried out. This transaction occurred in September, 1881. The money obtained by these advances was used in the business of the copartnership, and in developing the coal mine which belonged to the corporation; but the credit therefor seems to have been extended to Anderson personally, and to the firm. During the year 1882, various advances of money were made by the bank to the mining corporation, and on the 19th of February, 1883, the corporation was indebted to the bank in the sum of $13,784. On the 22d of February and the 2d of March, the account of the corporation was credited with the full amount of this indebtedness. Seven thousand five hundred dollars of this credit was for the note in suit, (which is for $2,500,) and two other notes for the same amount, each signed by the corporation and other parties. The balance of the credit was for four promissory notes of the mining corporation, three of which were secured by a real estate mortgage given by Anderson, and the fourth by a mortgage on the mining property of the corporation.

About the first day of February, an agreement was entered into between Schenck, who was the president of the bank, and Anderson, that the bank would accept the promissory notes of any responsible parties which Anderson might obtain and turn over, to it, and would give credit for the amount thereof on the indebtedness of the corporation; and, in pursuance of this agreement, Anderson prepared the three notes for $2,500 each, and signed the name of the mining

corporation to them, and procured defendant Gifford to sign the one in suit as surety, and other parties to sign the others in the same way, and delivered the same to Schenck, who indorsed them without recourse, and delivered them to the bank, and the amount thereof was credited on the account of the corporation.

There was evidence which would warrant the jury in finding that Anderson represented to defendant, for the purpose of inducing him to sign the note, that he had made an arrangement with Schenck to borrow $2,500 from him, to be used in starting the business of his coal mine, and that he needed that amount for that purpose, and would appropriate it to that use. Also that he represented that his property was unincumbered, and that he was still a stockholder in the bank. The debt contracted by Anderson and the copartnership in 1881 was still unpaid, and defendant had no knowledge of its existence, or of the indebtedness of the mining corporation to the bank. Defendant knew when he signed it that the note was signed by the Anderson Brothers Mining & Railway Company, but the evidence would justify the jury in finding that he then believed that this was the name of the copartnership composed of Anderson and his brother, and that he supposed that Anderson was personally liable on the note, and that Anderson knew that defendant was acting in that belief when he signed the note, but made no disclosures to him as to the real facts of the case. But defendant made no direct inquiry of him with reference to the matter, nor did Anderson directly state to him that he was personally responsible on the note, or that it was signed by said copartnership. The articles of incorporation of said company provided that the stockholders should not be liable for the corporate debts. Both Anderson and the corporation were insolvent when the note was given.

I. The court gave the following instruction to the jury: "If you find from the preponderance of the testimony that

1. INSTRUC-
TIONS: must
be supported
by evidence.
the signature of the defendant Gifford was pro-
cured by means of the false and fraudulent state-
ments of R. C. Anderson, and that he perpetrated
such fraud pursuant to a previous agreement therefor between
himself and the officers or agents of the plaintiff; or if, before
taking the note from Schenck, they had knowledge of the
fraud by which Anderson had procured Gifford's name to the
note,—it is void in the plaintiff's hands, and your verdict
must be for defendant. Mere suspicion or knowledge of
facts which would have put an ordinarily prudent man on
inquiry as to means by which the note was procured is not
sufficient, and is not equivalent to notice of the fraud."

Plaintiff assigns as error the giving of this instruction.
The correctness of the instruction as an abstract proposition
is not denied; but the objection urged against it is that it is
not based on any evidence given in the case. The instruc-
tion submits three questions to the jury for their determina-
tion, viz.: (1) Whether defendant was induced to sign the
note by the false statements of Anderson; (2) whether Ander-
son perpetrated such fraud pursuant to a previous agreement
therefor between himself and the officers or agents of the
bank; and (3) whether the officers or agents of the bank knew
of such fraud before they took the note from Schenck; and
it tells them that if from the evidence they can answer the
first question, and either of the others, in the affirmative,
their verdict must be for defendant. As stated above, there
was evidence which would warrant the jury in finding that
defendant was induced to sign the note by the false and
fraudulent representations of Anderson as to the purpose for
which he desired to use the note, and as to the condition of
his property and his own financial standing. But there is
no evidence which tends in any degree to prove either that
there was a previous agreement between Anderson and any
officer or agent of the bank that these representations should
be made, or that any person should be induced to sign the
note by means of them, or that they knew when they accepted

the note that defendant had been induced to sign it by any such means. This court has often held that it is error to submit a question of fact which is material to the case, upon which there is no evidence, to the jury for their determination. See *State v. Osborne,* 45 Iowa, 425; *York v. Wallace,* 48 Iowa, 305; *Templin v. Rothweiler,* 56 Iowa, 259.

II. Defendant did not apply to Schenck, or any other officer or agent of the bank, for information as to the purpose for which the note was being given, or as to the state **THE SAME.** of Anderson's account with the bank. Nor did they communicate any information on these subjects to him before accepting the note. The court gave the following instruction as to the duty of the bank to give him information as to the circumstances of the principal debtor before accepting him as surety for the debt:

"But whether Anderson perpetrated a fraud in procuring the note or not, if you find from a preponderance of the testimony that he had been the plaintiff's cashier, and while such cashier had fraudulently converted funds of the plaintiff to his own use, or that of the defendant corporation in which he was a stockholder, and for which he was general manager, and the officers or agents had knowledge thereof, if they had an opportunity so to do prior to accepting the note signed by the defendant Gifford in part payment or security for such deficit to the bank, it was their duty to notify him of such fraudulent conversion by Anderson, and if, upon having such opportunity, they failed in the performance of such duty, it vitiates the note. Yet, although Anderson or the defendant corporation had become largely indebted to the plaintiff, and both were insolvent on account of loss of investment in a coal mine, if such indebtedness was for loans or overdrafts in the usual course of business in plaintiff's corporation, or by the consent of its officers or agents other than Anderson, not involving fraud or criminality on his part, the plaintiff was under no obligation to notify the defendant Gifford of such

indebtedness or insolvency until he called on it for information."

We are of the opinion that there was no evidence in the case which justified the giving of this instruction. The doctrine of the instruction is that plaintiff was not bound to voluntarily notify defendant of the indebtedness and insolvency of Anderson and the mining corporation, unless the debt was created by the fraudulent or criminal appropriation by Anderson of the funds of the bank to his own use, or that of the corporation; but that if the indebtedness did arise out of such appropriation, and the officers of the bank had an opportunity, before accepting defendant as surety for the debt, to inform him of that fact, and neglected to do so, such neglect would vitiate the contract. A portion of the debt created in 1881 was contracted without the knowledge of the directors of the bank, it is true. But there is not the slightest evidence that it was contracted with a fraudulent or criminal intent by Anderson. He was solvent at that time, and was able to and did secure that indebtedness, and $5,000 in addition to that, to the entire satisfaction of the directors. The debt for which defendants' note was taken as security was the debt of the mining corporation, and was not contracted until December, 1882. There is no evidence showing the circumstances under which the credit was extended to the corporation. It is not shown that the advances were not made with the knowledge and consent of the directors of the bank. Nor is it shown that the circumstances of the corporation were such at the time that it was even imprudent to loan it that amount of money. There is no showing as to the amount or value of the property owned by it at the time, or as to the amount of business done by it, or of its business prospect. To submit to the jury, as the instruction does, the question whether the debt arose out of a fraudulent or criminal misappropriation by Anderson of the funds of the bank, was but to invite them to enter the field of speculation and conjecture.

· Having reached the conclusion that the evidence affords no warrant for the instruction in the form in which it was given, it would not ordinarily be thought necessary to consider the question of its soundness as an abstract proposition. But, in view of the probability of a retrial of the case, and of the importance of the question involved in its bearing upon the case, we have thought it proper to lay down what we conceive to be the true rule as to the duty of a creditor, who is about to accept personal security for a debt due him, to inform the surety of facts within his knowledge which would have the effect to increase the risks of the undertaking of the surety. The contract of suretyship, as a general rule, is for the benefit of the creditor, while the surety derives no advantage from it. Hence the law imposes upon the creditor the duty of dealing with the surety at every step of the transaction with the utmost good faith. If the surety applies to him, before entering into the contract, for information touching any matter materially affecting the risk of the undertaking, he is bound, if he assumes to answer the inquiry at all, to give full information as to every fact within his knowledge; and he can do nothing to deceive or mislead the surety without vitiating the agreement. And whether he is bound, before accepting the undertaking of the surety, and without being applied to by him for information on the subject, to inform him of facts within his knowledge which increase the risks of the undertaking, depends on the circumstances of the case. If there is nothing in the circumstances to indicate that the surety is being misled or deceived, or that he is entering into the contract in ignorance of facts materially affecting its risks, the creditor is not bound to seek him out, or, without being applied to, communicate to him information as to the facts within his knowledge. But in such case he may assume that the surety has obtained information for his guidance from other sources, or that he has chosen to assume the risks of the undertaking, whatever they may be.

2. PRINCIPAL and surety : duty of creditor to inform surety of facts relating to the risk.

But if he knows, or has good grounds for believing, that the surety is being deceived or misled, or that he was induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity, before accepting his undertaking, to inform him of such facts, good faith and fair dealing demand that he should make such disclosure to him; and if he accepts the contract without doing so, the surety may afterwards avoid it. This view of the duty of the creditor is supported by the following authorities: *Pidcock v. Bishop*, 3 Barn. & C., 605; *Owen v. Homan*, 4 H. L. Cas., 997; *Railton v. Mathews*, 10 Clark & F., 934; *Hamilton v. Watson*, 12 Clark & F., 109; *Franklin Bank v. Cooper*, 39 Me., 542; *Same v. Stevens*, Id., 532; *Graves v. Lebanon Bank*, 10 Bush, (Ky.,) 23; *Stone v. Compton*, 5 Bing., (N. C.,) 142; *Booth v. Storrs*, 75 Ill., 438; *Ham v. Greve*, 34 Ind., 18.

III. The court, in another instruction, told the jury that if Anderson perpetrated a fraud upon defendant, and thereby procured his signature to the note, the burden of proof would be on plaintiff to show, before it could recover on the note, that it took it without knowledge of the fraud. Plaintiff assigns the giving of this instruction as error. The position of counsel is that the fraud of the principal debtor in procuring the signature of the surety to the note does not constitute a defense against the note in the hands of the creditor. This is certainly true if the creditor accepted the note in payment of the debt, or gave an extension of time for its payment on its strength, without knowledge of the fraud. But if plaintiff knew, when it accepted it, that defendant's signature to the note had been obtained by fraud, it is as certainly true that the defense is available to the surety. The burden of proof is thrown on the indorsee, who seeks to enforce payment of a note which is tainted with fraud in its inception, to show that he is a *bona fide* holder. *Lane v. Krekle*, 22 Iowa, 399; *Union National Bank v. Barber*, 56 Id., 559. And there

3. ——: fraud on surety: avoidance of by payee of note: burden of proof.

is no reason why a more favorable rule than this should prevail in favor of the creditor who seeks to enforce payment against the surety whose signature to the contract was obtained by the fraud of the principal debtor. Other questions are presented by the record and were argued by counsel, but, as they will probably not arise on the retrial of the cause, we deem it unnecessary to consider them.

REVERSED.