## THE BANK OF MONROE V. GIFFORD.

1. **Surety:** RISK ASSUMED: DUTY OF CREDITOR. The apprehended or known insolvency of a stockholder and manager of a corporation, who procures the signature of another as surety to a promissory note made by the corporation, and to which the said manager is not a party, does not affect with suspicion the undertaking of the surety, so as to charge the creditor receiving the note with any duty to inform the surety as to the extent of the risk he is about to assume. (Compare *Bank of Monroe v. Anderson Bros. Mining & R'y Co.*, 65 Iowa, 692.)

2. ———: MISTAKE AS TO CAPACITY OF PRINCIPAL. In an action against a surety on a note of a corporation, it is immaterial that the surety at the time supposed that the principal maker was a partnership, whose members were individually liable.

3. ———: FRAUD IN PROCURING: EVIDENCE. Where a stockholder and the manager of a corporation procured the defendant's signature as surety to a corporation note, evidence that such manager and his two brothers owned all the stock of the company was immaterial, in an action against the surety, for the purpose of showing that such manager and the payee of the note were guilty of fraud in obtaining the signature of the surety.

4. ———: ———: ———. Nor was it material in such case to show that several other persons refused to sign the note before the defendant's signature was procured.

5. ———: ———: ———: HEARSAY. Nor was it competent in such case to prove by a third person what such manager said as to threats made by the creditor against him if he did not get the note signed, for such evidence was mere hearsay.

6. ———: RISK ASSUMED: DUTY OF CREDITOR: INSTRUCTION. An instruction to the effect that if there were facts increasing the risk of the surety, known to the creditor, but not to the surety, and the creditor had reason to believe that they were not generally known, it became the duty of the creditor to inform the surety of them, *held* erroneous, in that it omitted the condition that the creditor had good reason to believe that the facts were not known to the surety. (*Bank of Monroe v. Anderson Bros. Mining & R'y Co.*, 65 Iowa, 692, distinguished.)

7. ———: FOR CORPORATION: CHARACTER OF PARTY SECURING NAME IMMATERIAL. Where one has become a surety for a corporation, his liability is not diminished by the fact that the creditor accepting the security knew that the person who solicited the surety to sign the note had been guilty of dishonest practices and was irresponsible, and yet held him out to the public as being an honest and responsible man; for his honesty and responsibility were not involved in the obligation assumed by the surety.

*Appeal from Jasper Circuit Court.*

FRIDAY, MARCH 18, 1887.

ACTION upon a promissory note, executed by Anderson Bros. Mining & Railway Company, as principal, and the defendant, Gifford, as surety. There was a trial to a jury, and verdict and judgment were rendered for the defendant. The plaintiff appeals.

*Winslow & Varnum* and *J. Kipp & Son*, for appellant.

*J. F. Lacey, A. Clark* and *J. C. Cook*, for appellee.

ADAMS, CH. J.—This case is before us on a second appeal. See 65 Iowa, 692. In the opinion upon the former hearing is a statement of most of the essential facts necessary for an understanding of the case. The defendant avers that he was induced to sign the note by the fraudulent conspiracy of one R. C. Anderson with the officers of the plaintiff, and that the plaintiff took the note with knowledge of the fraud. He also avers that the plaintiff at one time held certain bonds as collateral security, and afterwards surrendered them; and that the defendant thereby became released.

I. One Mullen was examined as a witness, in behalf of the defendant, in regard to Robert C. Anderson's financial condition. He was asked a question in these words: "What amount of indebtedness do you know of him owing along about that time, out-side of any indebtedness that he might have had at the bank?" The plaintiff objected to the question as immaterial, but the objection was overruled, and the witness answered, "About $23,000." The witness was then allowed to testify, against the objection of the plaintiff, in relation to Anderson's assets; the object being to show that Anderson, at the time he applied to the defendant to become surety upon the note in suit, was insolvent. The rulings of the court which allowed the defendant to show Anderson's insolvency are assigned as error. The

<div style="margin-left:2em">1. SURETY: risk assumed: duty of cred- itor.</div>

principal maker of the note, to-wit, the Anderson Bros.. Mining & Railway Company, was a corporation engaged in mining coal. It does not seem to have been very successful, and in the prosecution of its work it had received money from the plaintiff bank to a large amount, and had been charged therewith in account. The note in suit, signed by it as principal, and by the defendant as surety, was made payable to one Schenck, president of the bank, and was by him transferred to the bank; and the mining and railway company, the principal maker, was credited the full amount of the note upon the account held against it by the bank. Robert C. Anderson was one of the stockholders in the company, and principal manager.

The defendant claims, and we think that the evidence shows, that the mining company did not have sufficient available assets to enable it to meet its indebtedness to the bank, and that the officers of the bank knew this, or greatly apprehended it. On the other hand, we think that Anderson regarded the company as abundantly solvent. He testified that the company had put something over $40,000 into the mine, and he regarded the company as worth $100,000. The company being pressed by the bank, Anderson, as manager of the company, went to his friend Gifford, the defendant, to obtain assistance. As to precisely what he said to Gifford there is some conflict in the evidence, but it seems certain that he made large representations as to what he expected from the mine, and that Gifford put more or less faith in what Anderson said about it. It seems, also, that he thought that the mining company was a partnership, that R. C. Anderson, being a member, was personally liable, and that his financial condition was very much better than it was in fact.

These were the circumstances under which Gifford was induced to become surety upon the note. The company was not a partnership, and Anderson was not personally liable. Gifford did not become surety for him, but for the mining company alone.

We come now to the question as to whether Anderson's insolvency, if he was insolvent,—and we think that the evidence tends to show that he was,—had anything to do with the defendant's liability to the bank. The defendant's position, as we understand it, is that Anderson was not only insolvent, but that the bank knew it, and should have known, if in fact it did not know, that the defendant must in some way have been deceived and misled. But the insolvency of Anderson did not make the mining company insolvent, and the bank, so far as we can see, had no reason to suppose that the defendant, in becoming surety for the mining company, relied upon the personal responsibility of Anderson. The bank was not responsible for the defendant's mistake in taking the mining company to be a partnership instead of a corporation, as in fact it was. Besides, the financial condition of both the mining company and Anderson depended upon the future of the mine, and every one knew that that was somewhat problematical. It is not an uncommon thing for persons actually insolvent, but with indefinite prospects, to apply to and obtain assistance from friends; and we think that we should be going quite too far to say that Anderson's insolvency should have affected this note with suspicion at the time it became the property of the bank.

Suppose that the mining company had been successful, and had paid the note, would any one, in looking back upon the transaction, have said that Anderson's apprehended or known insolvency should have warned the bank that the defendant could not properly be held as surety upon the mining company's note, and that the bank, when it took the note, took it at its peril? We think not. It would be a dangerous rule to hold that the apprehended or known insolvency of the principal maker of a note, without more, affects with suspicion the undertaking of a surety. It would be still more dangerous to hold the rule contended for, that the apprehended or known insolvency of some third person, not

a party to the note, but merely interested, and active in procuring it, affects with suspicion the undertaking of a surety. We think that the court erred in admitting evidence as to Anderson's insolvency.

II.   The defendant was allowed to testify, against the objection of the plaintiff, that he understood the mining company to be a partnership.   In this we think there was error.   The law provides that the articles of incorporation of every incorporated company shall be spread upon a public record.   We may assume that there was a public record of the articles of incorporation of the mining company.   If so, the defendant had constructive notice that the mining company was a corporation.   But, aside from that, it does not appear that the plaintiff did or said anything to lead the defendant into the mistake, or had any reason to suppose that such mistake had been made.

*2. ——: mistake as to capacity of principal.*

III.   The defendant was allowed to show in evidence, against the objection of the plaintiff, that R. C. Anderson, and two others, who were his brothers, owned the stock of the mining company.   In this we think that the court erred.   We cannot hold that, where a person becomes surety for a corporation upon a promissory note, his liability depends upon who are the stockholders.   The defendant's object appears to have been to show that the plaintiff bank and the Andersons were all interested, and all working together to defraud the defendant.   But R. C. Anderson was the one who procured the defendant to become surety, and the only question was as to whether he was guilty of fraud in doing it, and whether the plaintiff participated in or had knowledge of the fraud.   The fact that the stock was owned by the three Andersons had no tendency to show that what R. C. Anderson did or said was fraudulent, or that the bank had knowledge of the fraud.

*3. ——: fraud in procuring: evidence.*

IV.   When R. C. Anderson was on the stand as a witness,

the defendant's counsel asked him a question in these words: "How many different persons did you solicit to sign this Gifford note before you got Gifford on the note?" The plaintiff objected to the question as immaterial, but the court overruled the objection, and the witness answered: "I think that there were two, perhaps three, persons." The defendant's counsel, in attempting to justify the introduction of this evidence, say: "The note in question was not signed until he [Anderson] saw the third victim. He first tried one of his friends, and then another, and then Gifford. This is simply the whole history of the note in suit." But the history of the note is not worse, we suppose, than the history of many other notes. We are not aware that it has ever been held that, where one or more persons refused to sign a note as surety, any person afterwards signing it as surety is not bound by his signature. Probably the defendant's counsel do not claim that there is such rule. Their idea seems to be that the refusal of others to sign the note showed how the responsibility of the mining company was rated, and that Anderson, after he discovered this, was guilty of an act of bad faith in continuing his efforts to get a surety, or, at least, that the jury might so infer. But we cannot so hold. If a promissory note has an unwritten history of the kind in question prior to its execution, which is to follow it after its execution, wherever it goes, and affect the liability of a surety, no one could properly take a promissory note in reliance upon a surety.

V. One Scarborough was called as a witness in behalf of the defendant, and testified to a conversation between himself and R. C. Anderson, after the note in suit had been transferred to the bank. He was asked a question in these words: "State whether or not, in that conversation, he substantially stated that he was compelled to get these notes signed; that the officers of the bank compelled him to, and threatened to prosecute him criminally if he did not." The plaintiff objected to the testimony as

incompetent and immaterial, but the court overruled the objection, and the witness testified that the officers of the bank compelled him to turn over the note, and threatened to prosecute him, and put the stripes on him, if he did not. We do not think it was competent to prove what the bank officers said or did, by calling a witness to testify as to what Anderson said about it. That was mere hearsay.

VI. The twelfth instruction given by the court is in these words: "If you find Anderson Bros. Mining & Railway Company was insolvent at the time the note was taken for securing the plaintiff for money wrongfully drawn from the bank by R. C. Anderson, on account of Anderson Bros. Mining & Railway Company; that these facts were known to the officers of the bank, but were not known to the public generally, nor to the defendant, Gifford; and the officers of the bank knew, or had reason to believe, that such facts were not generally known,—it then became their duty, if they had opportunity, before accepting the note, to disclose said facts to the defendant."

The giving of this instruction is assigned as error. In the opinion filed in this case upon the former hearing, it appears to us that the court went as far as the law allows, and that the instruction above set out goes one step farther. The instruction, briefly stated, holds that, if there were facts increasing the risk of the surety, known to the bank, but not to him, and the bank had reason to believe that they were not generally known, it became the duty of the bank to inform the surety of them. The instruction omits the condition that the bank had good reason to believe that the facts were not known to the defendant, and it appears to us that such omission makes the instruction erroneous. The idea of the court probably was that, if the bank had good reason to believe that the facts were not *generally* known, it had, as a consequence, good reason to believe that the *defendant* did not know them. But, in our opinion, this is not so. It is

the privilege of a person actually insolvent, but not generally so known, to give a note with a surety. This, we think, is often done. A person is insolvent, the market value of whose assets is not equal to his liabilities. Yet such person may have good prospects, and the confidence of friends. The history of business would, we think, show that many an insolvent person has been tided over his insolvency by the assistance of others. Whoever becomes surety in such case may be presumed, in the absence of evidence to the contrary, to have estimated the risk which he undertakes. The fact that the insolvency is not generally known would not rebut the presumption. The public in general may have had no reason to investigate. The person who becomes surety has had. Take the case at bar. The responsibility of the mining company depended upon the value of its mine. The public in general could hardly be presumed to know whether the value was large or small. With the defendant it was different. He had a direct interest in the matter.

VII. Another instruction given is in these words: " If you find that R. C. Anderson, prior to the taking of the note, had, as cashier of the plaintiff bank, been guilty of dishonest or wrongful practices, for which he had been suspended from his office, and that said suspension was concealed from the public, and he was retained in the service of the bank in a situation where he appeared to the public as cashier of the bank, and in the enjoyment of its credit and confidence, and such act was in its nature calculated to mislead and deceive, and give said Anderson a fictitious credit, and the defendant, Gifford, was misled thereby, and was thereby induced to sign the note, then the plaintiff cannot recover on the note. But although he may have been misled to some extent by said acts of the plaintiff, yet, if the evidence shows that he would have signed the note notwithstanding said acts, they will not release him from liability." The giving of this instruction is assigned as error. The fact that the bank retained Anderson is not, in

7. ——: for corporation: character of party securing name immaterial.

our opinion, material. It may have had the effect to give him a credit to which he was not entitled. But Anderson's responsibility is not involved in this case. He was not a party to the note, nor did the plaintiff have any reason to suppose that the defendant thought he was. The defendant became surety for the mining company alone, and that was all that the bank saw when the note was presented to it for its acceptance.

We think that the court erred in giving the instruction.

REVERSED.