JOSIAH GALBRAITH and MARY ANN GALBRAITH, v. JOHN
McLAUGHLIN and GEORGE HAYWOOD & SON,
Appellants.

Rescission for Fraud : Old Age : EVIDENCE.   Where a husband and
wife, seventy-nine and seventy years old, respectively, are induced to
make a land deal involving about twelve thousand dollars, in which
they pay about five thousand dollars too much, the transfer should be
set aside, as between the parties, whether induced by fraud or mis-
understanding.

Bona Fide Purchaser.   The indorsee of a note, tainted with fraud
in its inception, has the burden of proving a good faith purchase.
Facts considered and held insufficient to meet that burden.

*Appeal from   Clinton   District   Court.*—HON.   C.   M.
WATERMAN, Judge.

FRIDAY, MAY 25, 1894.

ACTION in equity to declare two certain deeds, a
mortgage, and a promissory note fraudulent and void,
to set aside and cancel the same, and to enjoin the
transfer of said note and mortgage.   Decree was ren-
dered in favor of the plaintiffs.   Defendants appeal.
*Affirmed.*

*Hayes & Schuyler* and *Walsh & Sutton* for appel-
lants.

*Ellis & McCoy* and *Young & Young* for appellees.

GIVEN, J.—I.   Prior to January 2, 1891, the plain-
tiff Josiah Galbraith and defendant McLaughlin entered
into a parol agreement for an exchange of certain pieces
of real estate.   On January 2, 1891, plaintiffs, husband
and wife, executed to defendant McLaughlin their deed
of conveyance for a certain fourteen acre tract of land,
also for a certain thirty-two acre tract, both near Dewitt,

and for two lots in Toronto, all in Clinton county, Iowa. The plaintiff Josiah Galbraith, at the same time, signed a promissory note to said McLaughlin for eight thousand eight hundred and thirty-seven dollars and fifty-six cents, due on or before January 1, 1896, with eight per cent interest, payable annually, and plaintiffs signed and acknowledged a mortgage on what is designated in argument as their "home farm," and upon five lots and four parts of lots in the city of Clinton, all in Clinton county, to secure the payment of said note. The defendant McLaughlin executed to the plaintiff Mary Ann Galbraith his deed for fifteen lots in Wilcox subdivision, of certain lots in the city of Clinton, and two houses and lots in the town of Lyons, subject to a mortgage which the grantee assumed; also, his deed for a quarter section of land in Hansen county, S. D., subject to a mortgage for four hundred and forty dollars, which the grantee assumed. Plaintiffs contend that the agreement entered into was that they would convey to the defendant McLaughlin the two pieces of land and the two lots that they did convey to him, and that he was to convey to them, free and clear of incumbrance, nine lots in said Wilcox subdivision. They allege that it was not agreed that they would take fifteen of said lots, nor said lots in Lyons, nor said Dakota land, nor that they would give any note or mortgage or assume any incumbrance on the nine lots in Clinton. They allege that plaintiff Josiah Galbraith was over seventy-nine years of age, in poor health, and so feeble in mind as not to be capable of transacting business of importance, and that Mrs. Galbraith was seventy years of age, inexperienced in business, and easily imposed upon; that the deed to Mrs. Galbraith was read to them as being for the nine lots only; that they had no knowledge that any other property was conveyed to them, and had no knowledge that any note and mortgage had been signed by them until February 4, follow-

ing; that the acceptance of said deed and the execution of said note and mortgage were accomplished by false and fraudulent representations, artifice, cunning and undue influence over plaintiffs, and without their knowledge. The defendants deny that plaintiffs were incapable of transacting business, deny every allegation of fraud, artifice, and undue influence, and claim that the agreement was as represented by the several instruments executed, and that they were executed in pursuance of, and in accordance with, the agreement as made. Some question is made as to the issues tendered in the petition, and joined by the denial in the answer. Plaintiffs do not allege that they were induced by fraud to enter into the agreement, but that the defendant McLaughlin, by fraud, undue influence, artifice, and cunning, caused them to accept his deeds, in so far as they did accept them, under the belief that they conveyed only the nine lots, and to sign said note and mortgage not knowing that they were giving such instruments. This, defendants deny, and claim that the several instruments were executed in accordance with the agreement. The mental capacity of the plaintiffs to transact this business is a proper subject of consideration in deciding this issue.

II. We first inquire whether the agreement between Josiah Galbraith and John McLaughlin was as claimed by the plaintiffs or as claimed by the defendants. They agree that the plaintiffs were to deed to McLaughlin the four pieces of real estate that they did convey. These pieces plaintiffs held under a treasurer's deed, the nature and condition of which title McLaughlin fully understood, as he was experienced in land titles, and familiar with these records. According to Mr. Galbraith's own estimate, they were worth one thousand, nine hundred and eighty-seven dollars and fifty cents, but the evidence of other witnesses places their value much lower.

Galbraith says the nine lots were estimated at three hundred dollars each; other witnesses place their value at four hundred dollars to four hundred and fifty dollars each. According to Mr. Galbraith's statement, he was making over seven hundred dollars by the trade, while, according to the estimates of other witnesses, he was making much more. The agreement, as claimed by the defendants, is yet more unconscionable. The fifteen lots in Clinton, the two in Lyons, and the Dakota land were worth, free of incumbrance, about seven thousand dollars. For this, plaintiffs gave their tax-title property, worth, say, four hundred dollars, they assumed two thousand, five hundred and seventy-five dollars on the Clinton lots and four hundred dollars on the Dakota land, and gave a note and mortgage for eight thousand, eight hundred and thirty-seven dollars and fifty cents—in all, twelve thousand, two hundred and fifty-two dollars and fifty cents, or five thousand, two hundred and fifty-two dollars and fifty cents more than the value received. It is apparent that neither of these men was averse to driving the best bargain he could for himself, however unconscionable. While either version of the agreement is so unconscionable as to arouse suspicion of its fairness, we think the weight of the evidence is in favor of that claimed by the plaintiffs.

III. A number of witnesses more or less familiar with Mr. Galbraith's mental condition, were examined, some pronouncing him as quite feeble in mind, and others as remarkably strong, vigorous, and shrewd for one of his years. That he had been a shrewd, close, and successful dealer there is no doubt, but it is clear that the mental as well as physical weaknesses usually incident to seventy-nine years of age were upon him. He was not of unsound mind, but so enfeebled as to be confiding, and more easily deceived than in earlier life, and the same was true, to some extent, of Mrs. Gal-

braith. Mr. McLaughlin was their neighbor, with whom they had some dealings, and in whom they had confidence. He was in the prime of life, a shrewd and experienced real estate dealer, and, as we have said, was not averse to driving even a hard bargain. The life and character of Mr. Galbraith, as shown in the record, is against the conclusion that he would have understandingly made such a bargain as defendants claim. It is possible that, as a result of the many interviews, defendant McLaughlin may not have understood the agreement to be as plaintiffs claim, but we are in no doubt that the plaintiffs never understood or intended to give the note and mortgage that they did. We think they signed them in ignorance of what they were, and hence it is that, at first, they claimed them to be forgeries. Whether the execution of the note and mortgage was procured by fraud or misunderstanding, the transaction should be set aside as between the parties to it, especially in view of the gross inadequacy of consideration.

IV.    The defendants George Haywood and Murry Haywood were partners in a banking and real estate business, under the firm name of George Haywood & Son. The defendant McLaughlin did business at their bank, and was indebted to the bank, on the second day of January, 1889, in a sum for which the bank held certain collaterals. Some days previous, McLaughlin told Murry Haywood that he was negotiating with Galbraith for the mortgage, and asked if they would take it, and was told to bring it if he got it. Within a few hours after receiving the note and mortgage, McLaughlin met Murry Haywood in the street after banking hours, and handed the note and mortgage to him. Plaintiffs allege that defendants Haywood & Son received said note with notice, and as collateral security for some obligation due from said McLaughlin to them. They ask that said note and

mortgage be surrendered, canceled, and discharged, or, if it shall be found that Haywood & Son are purchasers in good faith and for value, or entitled to hold said note and mortgage as security, that, to the extent, thereof, plaintiffs may have judgment against defendant, McLaughlin. Defendants Haywood & Son answered, claiming that they bought said note and mortgage absolutely, on the third day of January, 1889, and that the same was delivered to them by McLaughlin with his indorsement in blank on the note. They deny that they had any knowledge, at the time of the purchase, of any of the matters alleged as invalidating said mortgage. "The burden of proof is thrown on the indorsee, who asks to enforce payment of a note which is tainted with fraud in its inception, to show that he is a *bona fide* holder." *Bank of Monroe v. Anderson Bros. Min. & R'y Co.*, 65 Iowa, 701, 22 N. W. Rep. 929. Applying this rule to this case, the burden is upon Haywood & Son to show that they took this note and mortgage without knowledge of the fraud in their inception, or of facts putting them upon inquiry which, if pursued, would have disclosed the fraud. They were acquainted with the business habits and financial standing of Galbraith and of Mr. McLaughlin, and, in a general way, with their property. They knew that, while Mr. Galbraith was dealing to some extent in real estate, he seldom borrowed money, but, on the other hand, was loaning money; that he was not in the habit of giving mortgages; that this mortgage covered substantially all of his property; and that the transaction was out of his usual course of business. They also knew that he was quite old, and subject to the infirmities usual to old age. They had a general knowledge of McLaughlin's business and property. They knew that he was frequently borrowing money, was in debt, and at times closely pressed. These facts were certainly enough to have suggested inquiry as to how

and for what the note and mortgage were given,—an inquiry which, if pursued, would soon have discovered their true character. No inquiry whatever was made, but, without question as to how McLaughlin came to have such a note and mortgage, Murry Haywood received them within an hour or two after their execution. It will serve no good purpose to here consider in detail what followed the delivery of the note and mortgage to Murry Haywood. It is sufficient to say that the entire transaction satisfies us that Haywood & Son received them with at least a suspicion that there was something wrong in their inception. On February 5, 1891, Murry Haywood was notified that plaintiffs claimed that they had never executed said note and mortgage. It is argued that, as plaintiffs had in fact signed them, and as the Haywoods knew, from personal knowledge and comparison, that the signatures were genuine, the notice did not even suggest any infirmity in the instruments. If they knew the signatures to be genuine, then such a notification surely indicated that there was some wrong attending their execution. A large part of the consideration paid for the note was paid after this notice of February 5. The evidence shows, quite satisfactorily, that the Haywoods took the note originally, merely, as additional collateral security for the existing indebtedness of McLaughlin to them, and that an absolute purchase was not then intended. While we have examined the case with care, we do not here notice many of the points made in argument, but simply the controlling facts. Our conclusion upon the whole record is, that the decree of the district court should be AFFIRMED.