Lane v. Krekle.

## LANE v. KREKLE.

1. **Bills and notes negotiable:** FICTITIOUS PAYEE. The correctness of the rule recognized, that if a person executes a promissory note to the order of a fictitious payee, *knowing* him to be such, he is liable to a holder receiving the note for value and without notice that the payee is fictitious.

2. —— PAYABLE TO BEARER. It is no defense to a *bona fide* holder of a note payable to bearer, that the payee named therein is a fictitious person, if such holder received the same without notice of that fact before due and for value.

3. —— INDORSEMENT BY AGENT. Nor is the fact that such holder acquired the note from a person professing to be the agent of the fictitious payee, and who indorsed the same as such to the holder, sufficient to charge him with notice of the fictitious character of the payee, or put him on inquiry, beyond the face of the note, as to the existence of such agent's principal.

*Argu.* 1. TITLE OF HOLDER. The indorsement of a note payable to bearer is not the mode or medium through which the holder acquires title ; such indorsement has full effect by treating it as intended to secure the liability of the payee as indorser, and the holder may rely for title upon his possession and the delivery to him.

4. —— NOTICE TO HOLDER. Whether the sole fact of knowledge on the part of the holder, for value, of a note payable to bearer, that the payee was fictitious, would defeat his right of recovery, *left an open question.*

| 22 | 399 |
| 90 | 65 |
| 22 | 399 |
| 91 | 692 |
| 22 | 399 |
| 95 | 539 |
| 22 | 399 |
| 96 | 141 |
| 22 | 399 |
| 105 | 552 |
| 22 | 399 |
| 134 | 579 |

Lane v. Krekel.

5. —— FRAUD : ONUS. The correctness of the rule recognized, that where a note has been obtained by fraud, the burden of proof is upon the party seeking to enforce its payment, to show that he is a *bona fide* holder.

6. —— MALA FIDES : PLEADING. But where a defense of this kind is pleaded against a party not a payee, it is necessary to allege notice on the part of the holder, of the facts thus pleaded; or that he gave no value; or received the paper after due; and if the answer fails in this, it is demurrable.

7. Pleading and practice: INTERROGATORIES. Neither the interrogatories nor the answers thereto, provided by the statute (Rev. 1860, § 2985 *et seq.*), will, on demurrer, aid a defective pleading.

*Appeal from Des Moines District Court.*

THURSDAY, JUNE 20.

PROMISSORY NOTE: FICTITIOUS PAYEE: FRAUD: ONUS PRO-BANDI.—Action by the holder against the maker of the following note:

"June 18, A. D. 1866. Three months after date, I, Jacob Krekle, of, etc., promise to pay V. L. Vanservens or bearer one hundred and fifty dollars, for value received.
   (Signed.)          JACOB KREKLE."

On the note are these indorsements:

"Pay George H. Lane and William O. Holcomb, or order, June 21, 1866.    WILLIAM HENRY, *agent for*
                              V. L. VANSERVENS."

"Pay George H. Lane, or order, October 1, 1866.
                              WILLIAM O. HOLCOMB."

Plaintiff alleges that said note became his property for a valuable consideration, and that it is wholly unpaid. The defendant answered thus:

"Now comes defendant, and for answer to plaintiff's petition, says: He admits that he affixed his signature to

said instrument sued upon, but avers (upon information and belief based upon diligent inquiry) that there was no such person as V. L. Vanservens, the person described as the payee of said instrument sued on; of which fact defendant was wholly ignorant at the time and for a long time after he signed said instrument. Wherefore defendant is advised by counsel to deny and does deny that, on the 18th day of June, 1866, he executed and delivered to V. L. Vanservens his promissory note, and that said Vanservens assigned and transferred said note to plaintiff, or that any one duly authorized by V. L. Vanservens has assigned or transferred the same to plaintiff. Second, for further answer, defendant says his signature to said instrument was obtained by fraud and false pretenses; that, prior to its date, there came into the county a stranger, calling himself William Henry, who represented that he was the duly authorized agent and attorney of one V. L. Vanservens; that said Vanservens was the discoverer and inventor of a very valuable improvement for the evaporation of sorghum, and was the patentee of a patent issued therefor; and that he, the said Henry, was selling the right for said Vanservens; that he exhibited a model and was anxious of receiving orders for the delivery of one of the evaporators, at a time thereafter. Finally, defendant was induced to order one, and was induced to sign the note' in question, under the belief that the effect of the same was a mere order to show the company or manufactory at Lansing, for whom to manufacture and where to send the evaporator, and said Henry well knew that defendant so understood it; and, thereupon, said Henry placed in defendant's hands an instrument transferring the right to use; and the said Henry, always as the agent of the pretended Vanservens, agreed to deliver the said evaporator on or before the next September, 1866, for which defendant was to pay at that time if he should be satisfied therewith, if

not, not. But defendant avers that the whole transaction was a fraud and a cheat; that there is no such patent; that there is no such person as V. L. Vanservens; that said Henry was going around taking this method of obtaining honest people's signatures, and transferring the paper. That plaintiff appears to have invested largely in the notes of citizens thus obtained by said Henry, but defendant cannot aver that he had notice, but asks that he be required to answer the interrogatories propounded and annexed hereto. Whereupon defendant asks judgment."

To this answer the plaintiff demurred upon these grounds:

To the first count, because it is no good cause of defense that there was no such person as V. L. Vanservens, the payee of the note sued upon, as the defendant recognized such a person by issuing to him his (defendant's) promissory note, which became the property of plaintiff before the same became due.

To the second count, because it is no defense for defendant to set up want of consideration and fraud by said Henry, agent of Vanservens, as it is shown that said note became the property of plaintiff before the same became due, and that he is a *bona fide* holder without notice of fraud or want of consideration.

The court sustained this demurrer. Defendant excepted, abided by his answer, and the court rendered judgment against him, from which he takes this appeal.

*J. C. & B. J. Hall* for the appellant.

. I. The allegations of the answer being admitted by demurrer, changed the burden of proof, and required the plaintiff to show that he was a *bona fide* holder. 1 Parsons on Notes, 255; 2 Id., 438.

II. The payee being fictitious, and defendant being ignorant of that fact when he executed it, the note is

void. It is not a promise to any one. It cannot be construed as payable to bearer. The defendant is not estopped. The plaintiff has no title to the note, a party dealing with an agent must take notice of his authority. And in purchasing this note of Henry, plaintiff is not a " bearer." 1 Parsons on Notes, 23, and notes; 2 Id., 50, and note *g*; Edwards on Bills *; Foster* v. *Shattuck*, 2 N. H., 448 ; *Bennett* v. *Fairrell*, 1 Campbell, 130 ; *Maniort* v. *Roberts*, 4 E. D. Smith, 83.

*Geo. H. Lane pro se.*

DILLON, J.—I. The fact that the note in suit is made payable to *bearer*, relieves the case of some difficulties that would arise were it payable to the person named, or *order*. In the latter case, we would be embarrassed by the question, how far, if at all, we would be bound by the line of decisions in the English courts, respecting bills and notes made payable to a *fictitious* payee. (As to the cases in England, see Chitty on Bills, 185 ; .Story, Id., §§ 56, 200 ; Edwards, 126 ; 1 Parsons on Notes and Bills, 32, and note).

1. BILLS AND NOTES NEGOTIABLE: fictitious payee.

Even under the English rule, if the defendant *knowingly* made the note to a fictitious person or order, and the plaintiff became a holder for value and without notice of the fact that the person named as payee was a myth, he could recover. This proposition we do not understand the defendant's counsel to deny. But he insists that this case does not fall within the above rule because, first, the defendant made the note *in ignorance* of the fact that the person named as payee had no existence, and because, second, the facts averred in the answer, affect the plaintiff with notice of the fact, and hence he is not a *bona fide* holder.

Upon reason and principle we are clear, that, if the plaintiff is a *bona fide* holder for value and without notice, the fact that the note is made

2. —— payable to bearer.

payable to a fictitious person, is no defense. In such case, the defendant would be estopped, as against the plaintiff, from setting up the fact. It was the defendant who made the note. By making it payable as he did, he affirmed the existence of such a person as the payee, therein named; and he should not, against a person ignorant of that fact, one who may reasonably be presumed to have acted upon the faith of the fact thus represented, be allowed to assert the contrary. This principle of estoppel *in pais* has a very extended and just application in the law of bills and notes, the doctrines of which are designed to give credit and circulation to negotiable paper; and to that end throw its protection around the honest and fair holders thereof. See *Frazer* v. *Massey*, 14 Ind., 382; 1 Parsons on Notes and Bills, 560, 589; Id., 244; Story on Notes, § 80; Edw. on Bills, 250; *Hogg* v. *Skeen*, 114 Eng. C. L., 426, 432, per WILLES, J.; *Erwin* v. *Downs*, 15 N. Y., 575; *Smith* v. *Lusher*, 5 Cow., 688, 711.

In respect to such a holder, the maker is bound to know that the payee is a real person, or thereafter "hold his peace." See the very recent case of *Phillips* v. *im Thurn*, 114 Eng. C. L., 694; *S. C.*, Id., 400; 1 Law Rep., C. P., 463, A. D. 1865. This was a case where the defense was, that the payee was a fictitious person, *in ignorance* of which fact, the drawer drew the bill. It was considered by the court, that since the drawer would be estopped to set up the fact that the payee was a fictitious name, the like estoppel would apply to an acceptor for the honor of the drawer. In principle this case is strongly if not decisively against the defense in the case at bar.

The ingenious and, at first view, somewhat plausible argument of the defendant's counsel, to show that the plaintiff is not, upon the facts averred in the answer, a *bona fide* holder, is in this wise: The payee is fictitious, hence there is no promise to pay

3. ——indorse-
ment by
agent.

any one; the note consequently was void; the indorsement or transfer in the name of such fictitious payee can confer no title, certainly where the transferee takes it with notice. In this case it was transferred by an agent, and the plaintiff purchasing it from the agent, was bound to take notice of his authority, and, as the agent had no authority, it follows that the plaintiff acquired no title.

The argument is in part inapplicable to the present case, and in part unsound. It is inapplicable because the *Argu.* 1. Title note is payable *to bearer*, and hence the title of holder. thereto will pass by delivery. The plaintiff is not bound to deduce or claim title to the note through the indorsement appearing thereon. This indorsement has full effect by treating it as intended to secure the liability of the payee as an indorser. It is not to be treated as the mode or medium through which the plaintiff acquired title. Plaintiff may rely for title upon his possession and the delivery to him (of which possession is evidence), and is not bound to be considered as having acquired the property in the note by or through the indorsement thereon. So that the case comes to this: Suppose Henry, the alleged agent, had met plaintiff and said to him, "I am the agent of Mr. Vanservens, and I wish to sell you this note," exhibiting the note in suit; and suppose the plaintiff had thereupon bought it and took a transfer of it by delivery in good faith and before due, would he in this event be open to equities existing in favor of the maker? We think not. It is not averred or claimed in the answer that the plaintiff had notice of the *facts* upon which the defense rested. It is only claimed that he had, in the way before stated, notice that Henry was an agent, and that this was sufficient to put him upon inquiry as to the existence of his principal. If this be admitted, we hold that he was bound to inquire no further than the note itself, which on its face contains an admis-

sion by the defendant of the existence of the person named as payee.

And in thus deciding the point we do not wish to be understood as holding that, if the plaintiff had received the note with knowledge that the payee was fictitious, that *this alone* would defeat his right to maintain an action upon it. This is a question which we leave open, remarking simply, that the decisions in England on this subject are such as, in our judgment, to require at least an examination into the grounds upon which they rest, before assenting to their correctness. It is not unusual to make bills, bonds, bank-bills, etc., payable to a fictitious name or bearer, and such paper is generally regarded the same as if payable to bearer.

4. —— notice to holder.

II. It will be noticed that the answer, although pleading facts which show that the note was fraudulently procured, neither alleges that it was taken by the plaintiff after it was due, or that the plaintiff gave no value for it, or that he had notice of the alleged fraud.

5. —— fraud: onus.

It is argued, however, by the defendant's counsel, that the answer is nevertheless sufficient. That argument is based upon the rule, that where a note has been obtained by fraud, the burden of proof is upon the plaintiff to show that he is a *bona fide* holder.

Such is the prevailing, and, in our judgment, the correct doctrine. It is the unquestioned rule of the English courts—Queen's Bench, Common Pleas and Exchequer. Of these courts, in late years, the Common Pleas has been most distinguished for its ability; and Lord Chief Justice ERLE thus, in a recent case, states the rule and the estimation in which he holds it: " I consider it to have been established by a long course of precedents, that, on proof being given that the bill is tainted with fraud in its inception, the burden is thrown upon the party who

seeks to enforce payment, to show that he gave value for the bill. And this I consider to be a most salutary rule for the prevention of fraud and usury against an innocent party." Per ERLE, Ch. J., in *Hogg* v. *Skeen*, 114 Eng. Com. Law Rep., 426, 429, A. D. 1865. And see *Fitch* v. *Jones, infra.*; Byles on Bills, 61.

And such is also the prevailing rule in this country. 2 Parsons on Notes and Bills, 438; *Munroe* v. *Cooper*, 5 Pick., 412; *Gray* v. *The Bank, etc.*, 29 Penn. St., 365, and prior cases in that State referred to; *Perrin* v. *Noyes*, 39 Maine, 384; 16 Id., 465; *Ellicott* v. *Martin*, 6 Md., 509; *Vather* v. *Zane*, 6 Gratt., 246.

But this is a rule relating to evidence and not to pleading. Where the action is by a person not a payee, it is
6. —— mala fides: pleading. necessary to allege notice of the facts pleaded in defense, or that the holder gave no value, or received the paper after due. And this precise point was so ruled, as will be seen on a careful examination in *Clapp* v. *Cedar County* (5 Iowa, 15, 59). And see also *Uther* v. *Rich*, 10 Ad. & El., 784; *S. C.*, 37 Eng. C. L., 232–233, per Lord DENMAN; *Fitch* v. *Jones*, 85 Id., 238, *S. C.*, 5 El. & Bl., 238; *Bailey* v. *Bidwell*, 13 M. & W., 73.

The answer fails to do this, and is therefore insufficient on demurrer; unless the appellant's further position is
7. PLEADING AND PRACTICE: interrogatories. sound, that a pleading is not demurrable where, as in this instance, facts are sought by interrogatories annexed thereto. Rev., § 2985, *et. seq*. But this is only a special mode of procuring evidence; when elicited, it is provided that it "may be read by either party as a deposition." It is quite plain that neither the interrogatories nor the answers thereto will on demurrer, aid a defective pleading, by making good as a pleading, one which would otherwise be bad.

Affirmed.