FARMINGTON SAVINGS BANK *vs.* CHARLES W. FALL.

York.   Opinion February 16, 1880.

*Promissory note. Indorsement. Variance. Savings Banks.*
*R. S., c. 47, § 91.*

The writ declared upon a note payable to the order of C. B. Mahan, Agent, and indorsed by C. B. Mahan, Agent, to the plaintiff, and the indorsement upon the note was "Granite Agricultural Works, C. B. Mahan, Agent;" *Held*, that the indorsement is the indorsement of C. B. Mahan, Agent, the payee of the note, as alleged in the declaration, and is not vitiated by the needless reference to the company for which he was agent, and that there is no variance, and the note was properly received in evidence.

The statute, prohibiting savings banks from loaning money on the security of names alone, is directory to the trustees, and designed for the protection of the depositors, and will not prevent a bank from enforcing payment of a promissory note whether the purchase was or was not in conformity with its provisions.

ON EXCEPTIONS.

The writ was dated November 5, 1875, and contained the following declaration :

"In a plea of the case, for that the said defendant, at said Berwick, on the nineteenth day of March, A. D., 1875, by his promissory note of that date, by him subscribed, for value received, promised to pay to the order of one C. B. Mahan, agent, the sum of one hundred and sixty-one dollars in seven months then next, now past, meaning with interest thereafter as the plaintiff avers, at the Great Falls National Bank, at Somersworth, in said county of Stratford, and the said C. B. Mahan, agent, as aforesaid, thereafterwards, on the same day, by his indorsement of said note, in writing, under his hand as agent, aforesaid, for value received, ordered the contents of said note, then due and unpaid, to be paid to the plaintiff, according to the tenor thereof; of all which the said defendant then and there had notice and thereby became liable, and in consideration thereof

then and there promised to pay the plaintiff the contents of said note according to the tenor thereof.   Yet," &c.

(Note.)

"Berwick, Mar. 19th, 1875.

$161.00.

Seven months after date I promise to pay to the order of C. B. Mahan, Ag't, one hundred and sixty-one dollars, at the Great Falls National Bank, Somersworth, N. H.

Value received.                              CHARLES W. FALL.

No. 2.   Oct. 10—22.   Due Nov. 19th, 1875."

(Indorsement.)

" Waiving demand and notice.

Granite Agricultural Words.   C. B. Mahan, Agent."

John F. Cloutman, president of the savings bank, testified :

*Question.*— What was the transaction in regard to this note ?

*Answer.*— The transaction we had when the notes were discounted, was, they were brought to our bank and that, with other notes was discounted in our savings bank.

*Question.*— What was the rate of discount ?

*Answer.*— Six per cent.

*Question.*— State the trade fully.

*Answer.*— He [Mr. Wiggin] stated if we would discount those notes at six per cent. he would leave fifty per cent. of the amount as collateral, with us, till the notes were all paid.   This note was then discounted.

Thomas F. Cook, treasurer of the bank, testified :

*Question.*— State what the transaction was in regard to discounting this note ?

*Answer.*— Mr. Wiggin, who was acting at that time as financial agent of the Granite Agricultural Works, came into the bank one day with Mr. Cloutman.   He had been to see Mr. Cloutman, first, and presented some notes, among which, was this one, for discount.   The arrangement had been substantially made, and I discounted them.

*Question.*— How much money was paid him for the notes ?

*Answer.*— Some twenty-five or twenty-six hundred dollars I think.

*Question.*— Do you remember how much the notes amounted to, which were left at that time ?

*Answer.*—I think about thirty-three hundred dollars of notes of this kind.

*Question.*—What other notes were left?

*Answer.*—Two notes, one thousand dollars each, signed by the Granite Agricultural Works, and indorsed by John Clark, of Lebanon, I think. At the time this note was presented at our bank for discount, it was then in the condition in which it now is, excepting my indorsement on the back.

*Question.*—Have those Granite Agricultural Works notes ever been paid?

*Answer.*—No. The bank has never received any money on them.

*Question.*—How much of these (farmers') notes has been received?

*Answer.*—I think about eleven hundred dollars, leaving a balance of between fourteen and fifteen hundred dollars, due of the money we advanced.

The verdict was for plaintiff for $182.74; and the jury specially found as follows, in answer to the interrogatory:

*Question.*—"Was the inception of this note fraudulent?"

*Answer.*—"Yes."

*Wells & Burleigh,* for the plaintiff.

*William J. Copeland,* for the defendant, cited: *Billings v. Collins,* 44 Maine, 271; *Nutter* v. *Stover,* 48 Maine, 163; *Perrin* v. *Noyes,* 39 Maine, 384. The plaintiff was not an innocent indorsee,—the purchase of the note was in violation of law, R. S., c. 47, § 91. In the absence of proof the presumption is, that the statute of New Hampshire is the same; *McKenzie* v. *Wardwell,* 61 Maine, 136; see *Fowler* v. *Scully,* 72 Pa. St. 456; *Franklin Co.* v. *Lewiston Inst. for Savings,* 68 Maine, 43. The payee is joint owner with plaintiff. That interest opens the defence where it was payable. 11 N. H. 66; 16 N. H. 39; 15 N. H. 579; 17 N. H. 116; *Stickney* v. *Jordan,* 58 N. H. 106. There was a variance. *Mellen* v. *Moore,* 68 Maine, 390.

BARROWS, J. The defendant made the note upon which he is here sued, at Berwick, in this State, setting forth therein that it was for value received, and payable in seven months after date

to the order of C. B. Mahan, agent, at the Great Falls National Bank, Somersworth, New Hampshire.   The note is so described in the plaintiff's declaration, in which it is further averred that the said C. B. Mahan, agent, on the  day of  the  date,  duly indorsed it, and thereby for value received, ordered the contents thereof, to be paid to the plaintiff, &c.   The indorsement runs thus :

"Waiving demand and notice.

Granite Agricultural Works.   C. B. Mahan, Agent."

I. Defendant objected to the reception of the note in evidence, claiming that the note and indorsement varied from the allegations in the writ, and that the note offered was not indorsed by the payee.

His objection was overruled — rightly, we think ; for whether the peculiar form of the indorsement was adopted in order to transfer some supposed interest, equitable or otherwise, which the Granite Agricultural Works might have in the note, or only to indicate that C. B. Mahan, was the agent of that company, it is none the less the indorsement of "C. B. Mahan, Agent," who was the payee of the note ; and that indorsement was placed there with a design to transfer the property in the note to the indorsees.   The party supposed to be beneficially interested, was named when the note was indorsed, but omitting as surplusage all such reference to the party perhaps interested, but not named in the note as payee, the payee's indorsement still remains, and, being so designed, is sufficient to transfer the property in the note, whether he was acting as the agent of the Granite Agricultural Works or any other party beneficially interested in the transaction.   The act is to be deemed the act of him who might lawfully do it, and is not vitiated by the needless reference to the party for whose benefit it was done.

II. Defendant claimed that a nonsuit should be ordered on the ground that savings banks are prohibited by law from the purchase of such notes.   He relied on R. S., c. 47, § 91, which, after directing that "the trustees shall see to the proper and safe investment of the deposits and funds of the institution, in the manner they regard perfectly safe," adds, "but no loan shall be made on security of names alone."

And, inasmuch as there was no evidence as to what the law of New Hampshire, where this contract was to be performed, is in this respect, he insists that the presumption is that it is the same as that of this State. But assuming that the law of New Hampshire is like ours, which is but a direction to the trustees, designed for the benefit and security of depositors, it is not to be so construed as to defeat its own purpose, and enable the makers of negotiable paper to set up defences, to which they would not be otherwise entitled. The reasons for thus holding, are adverted to in *Roberts* v. *Lane*, 64 Maine, 108; which is not distinguishable in principle from the present case, although it was not the same statutory prohibition which was there invoked to invalidate the transfer of the note. But it was necessary in that case, for Roberts, who took the note from the bank long after it was due, and with notice that it would be contested on the ground of fraud in its inception, to establish the proposition that he was entitled to the rights of a *bona fide* indorsee for value without notice; and it was held, that the bank had such rights, and could transfer them to Roberts, notwithstanding the fact that the bank took the note in face of the statute prohibition against discounting paper without at least two responsible names thereon. Unless the bank could have maintained an action on the note without being subject to a defence which might have been set up as between the original parties, it could transfer no such right to Roberts.

That "a national bank which purchases a promissory note from an indorsee, may maintain an action thereon in its own name against a prior party thereto, without regard to the question whether the purchase was one which it was authorized by law to make" was determined in *National Pemberton Bank* v. *Porter*, 125 Mass. 333, and the doctrine maintained by an abundance of forcible reasoning and authority. It is true that the Massachusetts court, in that case, had no occasion to consider whether such prior party was thereby let in as against the bank, to any equitable defence which he might assert, had the suit been in the name of the original payee, and in this respect the case last referred to does not go so far as *Roberts* v. *Lane;* but it is, nevertheless, directly in point to justify the refusal of the

presiding judge to order a nonsuit in the case at bar; the defendant's motion for the nonsuit being based upon the position that the plaintiff savings bank was prohibited by law from the purchase of such notes. ·

III.   Upon the testimony of the president and treasurer of the savings bank, defendant contended that the savings bank was not such a holder for value, as would preclude the defendant from setting up any defence which might be available as between the original parties.   This proposition his counsel seeks to maintain here on two grounds—first, because he says the plaintiff, having become possessed of the note in violation of the before mentioned statutory prohibition, cannot be regarded as an innocent indorsee; second, because he says the testimony shows that the bank holds the notes as collateral security, and by the law of New Hampshire where the contract was to be performed, such holders are not relieved from the equities between the original parties.

The first branch of this argument, is, in effect, as we have already seen, substantially disposed of by the case of *Roberts* v. *Lane, ubi supra.*

The defence of fraud in the inception of the note, ought to have availed the defendant there, if it can here.   Leaving out of sight all considerations of the ill effect, in a mercantile point of view, of placing undue restrictions upon the transfer of negotiable paper beyond what good faith and fair dealing require, we think that the well settled doctrine of the law, that where one of two innocent parties must suffer for the misdoings of a fraudulent third, the loss must fall upon him whose act originally enabled the wrong doer to occasion it, ought to be decisive in favor of the plaintiffs.   The defendant issued his negotiable promissory note, payable on time, and thereby enabled the party, with whom he dealt to get the money of the depositors in this savings bank, or its officers.   Its officers had no notice of any equities between the party with whom they dealt and the maker of the note.   They discounted the note in good faith, before it fell due, using the money of their depositors.   Shall the depositors lose it? The numerous cases establishing the doctrine just adverted to, would seem to forbid it.   If it be said that the

officers who took the note, must make the loss good to the savings bank, the condition of the defendant is no better. It was his giving his negotiable promissory note to the party with whom he dealt, that enabled that party to possess himself of money, which became, to all intents and purposes, the money of the officers, if they are liable to refund to the bank. There is no statutory inhibition of the purchase of negotiable notes by the officers as individuals, and it could not be said that the purchase would not enure to the benefit of the officers personally, if they are personally held liable to account to their bank for the money.

The source of the trouble, is the defendant's act in putting his promise to pay, in the form of a negotiable note, into the hands of one who was invested by him with the apparent legal right to dispose of it to any *bona fide* purchaser. As between the maker of the note and such purchaser, if loss must accrue to either, it should fall on the maker.

Touching the second ground upon which the defendant claims to be let in to his defence, we think a careful examination of the testimony reported, shows that the transfer of this note, and others of its class, was absolute, and not as collateral, to the notes of the Granite Agricultural Works, and that the case falls under the rule laid down in *Bank of Woodstock* v. *Kent*, 15 N. H. 579, where Parker, C. J., remarks: "It was not necessary that they should have parted with their money on the credit of this alone to entitle them to the ordinary rights of indorsees, who have purchased before the note became due. It is sufficient that they became the owners of it."

*Exceptions overruled.*

Appleton, C. J., Walton, Virgin, Peters and Libbey, JJ., concurred.