Minshall, C. J.
This case is in its general features analogous to that of Dodge v. The National Exchange Bank, 20 Ohio St. 234, and should, as we think, be ruled by it. There a paymaster of the United States, who kept his account at the bank, drew his check on the bank in payment of an indebtedness of the United States to Frederick B. Dodge, and delivered it to the person who presented the certificate, he representing himself to be Dodge. This representation was false, and the person making it was a thief. Being a stranger to the paymaster, he at first refused to pay the claim to him, but on his assuring him that he could identify himself at the bank, the paymaster drew the check payable to Dodge or order, and delivered it to the person presenting the certificate. The amount of the check was paid him by the bank on his representing himself to be Dodge and indorsing the check in that name. The bank had no knowledge of what had transpired prior to the presentation of the check for payment, and supposed it was paying it to the right person. In deciding the case the court laid down the following principles :
“ 1. The duty of a banker is to pay the checks and bills of his customer, drawn payable to order, to the person who becomes holder by a genuine endorsement; and he can not *519 charge him with payments made otherwise, unless the circumstances amount to a direction from the customer to the banker to pay the paper without reference to the genuineness of the indorsement, or are equivalent to a subsequent admission that the indorsement is genuine, in reliance on which the banker is induced to alter his position.
“2. When there is no fraud, or special understanding between the banker and his customer, the liability of the banker for paying a check upon a forged indorsement, can not be affected by conduct of the customer in drawing the check, of which the banker had no notice.”
The case was again brought to this court upon a question of evidence, and was assigned to and disposed of by the first commission, which, after a full and careful re-examination, approved and followed the former decision; and the principles announced in the case after such careful consideration must determine this one.
By the fraud of one Grimes the plaintiff was induced to purchase a note that had no real existence as a security. She is found by the court to have been ordinarily careful and prudent in the transaction, but was deceived. She supposed that she was purchasing a valid security belonging to a man, as represented by Grimes, by the name of William Brown, and for whom, as he represented, he was acting as agent, and gave to the assumed agent for Brown a check for the amount, payable to Brown or his order. -Now it is evident, both upon reason and the authority of the previous decisions, that the circumstances under which the plaintiff was induced to give the check, even though calculated to arouse suspicion on her part, cannot modify the duty required of the bank in the matter of paying or not paying the check. It is not claimed that the bank had any knowledge of how or under what circumstances Grimes had obtained the check, and there is no finding of any such course of dealing between the bank and the plaintiff as would have authorized it to depart from the general duty of a bank in paying the checks of its customers, drawn payable to a certain person or order. It was its duty to pay to the person named or his order, and to withhold payment until it *520 was satisfied, both as to the identity of the payee and the genuineness of his signature. Morse on Banking, sec. 474; Robarts v. Tucker, 16 Q. B. 560, per Maule, J., at p. 578.
It is found that the bank made the usual inquiries respecting the identity of Grimes, and in other respects was ordinarily careful and prudent in relation to the transaction; but this must be taken in connection with the further fact that Grimes was not the payee of the check, and that his indorsement, without the genuine indorsement of the payee, could confer no title upon the holder of the check, or any interest in it, as against the drawer. “ There is no doubt,” says Lord Kenyon in Tatlock v. Harris, 3 T. R. at p. 181, u but that the indorsee of a bill of exchange, payable to order, must in deriving his title, prove the handwriting of the first indorser.” See Mead v. Young, 4 T. R. 28, 30; 2 Parsons N. & B. 595. The indorsement on the check, purporting to be that of the payee,. Brown, had been placed there by Grimes, and was either a forgery or a fraud, and, for the purposes of this case, it is not material which it is termed. As to it the bank acted upon the representations of Grimes, and did not otherwise know whether it was genuine or not. As said in Dodge v. The Bank, 30 Ohio St. 1: “ The rightful possession of a check by no means carries with it or implies a right to demand or receive payment of it, without the genuine indorsement of the person to whose order it is made payable;” and if a banker accept or undertake to pay a check, “ he must see to it, at his peril, that he pays according to the terms of the order, and to the party named therein, or to one holding it under the genuine indorsement of such payee. * * * And this is true, whether the defendant exercised the degree of caution which bankers usually do in such cases, or not. The question is, was the check paid to the party to whom, by its terms, it was made payable?” Therefore, the court rightly concluded, as a question of law from the facts found, that the payment of' the check by the defendant was not authorized by the plaintiff, and that it could not rightly be charged to her account.
The fact that the check was made payable to a person that had no existence does not alter the rights of the plaintiff as- *521 against the bank, for she supposed that Brown was a real person, and intended that payment should be made to such person. The doctrine that treats a check or bill made payable to a fictitious person, as one made payable to bearer, and so negotiable without indorsément, applies only where it is so drawn with the knowledge of the parties. Tatlock v. Harris, 3 T. R. 174, 180; Vere v. Lewis, Id. 182 ; Minet v. Gibson, Id. 481; s. c. in the House of Lords on error, Gibson v. Minet, 1 H. Bl. 569 ; Collis v. Emett, 1 H. Bl. 313 ; Gibson v. Hunter, 2 H Bl. 187. The doctrine that a bill payable to a fictitious person or order, is equivalent to one payable to bearer, had its origin in these cases, which all grew out of bills drawn by Levisay & Co., bankrupts, payable to a fictitious person or order, and were accepted by Gibson & Co.; but it will be noticed that the holding in each case was upon the express ground, that the acceptor knew at the time of his acceptance that the bill was payable to a fictitious person ; and but for this fact the fictitious indorsement would have been held to be a forgery — some of the judges expressing a doubt whether it was not so, although its character was known to the acceptor. (3 T. R 181)1 These cases will be found reviewed in a note to Bennett v. Farrell, 1 Campb. 130. It was held in this case that a bill made payable to a fictitious person or order, is neither payable to the order of the drawer or bearer, but is completely void. But in an addendum to the case, at page 180c of the report, Lord Ellenborough observes that this holding must be taken with this qualification: “ unless it can be shown that the circumstance of the payee being a fictitious person was known to the acceptor.” The rule with this qualification is stated as the law, in Byles on Bills, 73. See also t(. the same effect Forbes v. Espy, 21 Ohio St. 483; 1 Rand. Com Paper, § 162, § 163, § 164; 2 Parsons, N. & B. 591 and note (a). Mr. Daniels in his work on Negotiable Instruments, § 139, states the rule to be general, but, as shown by Mr. Randolph, the cases do not bear out the text. 1 Rand. Com. Paper, § 164 note (4). And upon principle we do not see how the law could be held to be otherwise. For if the fictitious character of the payee is unknown to the drawer, whoever in *522 dorses the paper in that name with intent to defraud, perpetrates a forgery and the indorsement is void, a general intent to defraud being sufficient to constitute the offense.
The case of Lane v. Krekle, 22 Iowa, 399, is not in point; for there the note was made payable to a fictitious person “ or bearer,” and passed by delivery without indorsement. The case of Phillips v. Im Thurn, 114 Eng. C. L. 694, cited by the learned judge, is clearly distinguishable from the case before ' us. There the signature of the drawer as well as the indorsement was a forgery ; but the defendant, the acceptor, was held liable because the plaintiff discounted the paper, relying in good faith upon the acceptance of the defendant. The case was finally disposed of on a case stated, reported in 1 Law Rep. C. P. 463. The ground of the decision appears from the following observations of Keating, J., p. 472 : “ I think, upon the facts stated in this special case, that it was not competent to the defendant to deny the genuineness of this bill. He knew that the plaintiffs were willing to advance money upon the bill only upon his vouching by his acceptance of it the authenticity of the drawing. His acceptance amounted to a representation to the plaintiffs, which enabled the person representing Plana to obtain money from the plaintiffs on the bill.” The decision in this case simply followed a well recognized principle in the law of notes and bills. It is thus stated by Mr. Smith : “Though the drawer’s signature be forged, the drawee, if he accepts the bill, is bound to pay it, provided it be in the hands of a holder bona fide and for value, for the drawee’s acceptance admits the drawer’s handwriting to be genuine.” Smith’s Mercantile Law, 334. Now, Mrs. Armstrong can in no way be said to have affirmed by any act of hers that the indorsement upon the check was genuine, for there was no indorsement on it when it left her hands.
The case of Rogers v. Ware, 2 Neb. 29, cited by counsel for defendant in error, does not support his contention. The case of Ort v. Fowler, 31 Kan. 478, was rested upon a number of grounds; and, in so far as it may have been on the ground that a note made payable to a fictitious person or order is in effect payable to bearer, irrespective of the knowl *523 edge of the maker, it simply follows the authority of 1 Daniels Neg. Inst. § 139, which we have shown is not borne out by the cases relied on.
If the drawer of a check, acting in good faith, makes it 'payable to a certain person or order, supposing there is such person, when in fact there is none, no good reason can be perceived why the banker should be excused if he pay the check to a fraudulent holder upon any less precautions, than if it had been made payable to a real person ; in other words, why he should not be required to use the same precautions in the one case as in the other; that is, determine whether the indorsement is a genuine one or not. The fact that the payee is a non-existing person does not increase the liability of the bank to be deceived by the indorsement. The fact is that an ordinarily prudent banker would be less liable to be deceived into a mistaken payment by a fictitious indorsement such as this was, than by a simple forgery. The determination of the character of any indorsement involves the ascertainment of two things : (1) the identity of the indorser, and (2) the genuineness of his signature; and no careful banker would pay upon the faith of the genuineness of any name, until he had fully satisfied himself both as to the identity of the person and the genuineness of his signature. Now, a careful banker may be deceived as to the signature of a person with whose identity he may be familiar; but he is less liable to be deceived where both the signature and the person whose signature it purports to be, are unknown to him. In making the inquiry required in such case to warrant him in acting, he will either learn that there is no such person, or that no credible information can be obtained as to his existence, which, with an ordinarily prudent banker, would be the same as actual knowledge that there is no such person, and he would withhold payment, as he would have the right to do in such case. But still, if he should be deceived as to the existence of the person, he would, nevertheless, require to be satisfied as to the genuineness of the signature. Of this, however, he could not be through his skill in such matters, and on which bankers ordinarily rely, for he would be with *524 out any standard, of comparison, and he could have no knowledge of the handwriting of the supposed person, for there is no such person. So that, if he acts at all, it must be upon the confidence he may place in the knowledge of some other person, and if he choose to act upon this, and make, instead of withholding, jiayment, he acts at his peril and must sustain whatever loss may ensue. It is a saying frequently repeated in “ The Doctor and Student,” that “ he who loveth peril shall pei'ish in it.” In other words, where a person has a safe way and abandons it for one of uncertainty, he can blame no one but himself if he meets with misfortune.
The case of Vagliano Brothers v. The Bank of England, recently decided in England by the Court of Appeal, 23 Q. B. D. 243, and called to my attention since the above opinion was written, fully supports the conclusion we have reached.

Judgment of the oirouit court reversed, and that of the common pleas affirmed.