THE FIRST NATIONAL BANK OF DUBUQUE v. H. L. GETZ, Appellant, and H. L. GETZ v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, *et al.*, Appellants.

96  139
123  156.

**Negotiable Instruments:** GOOD FAITH BUYER. G. gave his note for insurance. The payee contracted that the note might be renewed for three years. A second note was sent in renewal, and later; a third. Payee acknowledged its receipt, promised to return the second note and failed to do so. The second note was sold to plaintiff before maturity, and it had no knowledge of any fraud on part of payee. *Held*, plaintiff may recover on the note.

**Principal and Agent:** APPARENT AUTHORITY. Defendant made his note for insurance payable to D. who was the state manager of the insurer. He agreed to renew the note for three years and receipted for the note, in his official capacity, on a blank furnished by the company. The giving of a second note in renewal was induced by B. who signed himself "superintendent of agents." A third renewal was obtained by one who appeared on the company's letter-heads as "cashier," and so signed the request for the note. The "cashier" acknowledged the receipt of the note and furnished defendant a new policy. He promised, but failed to return the second note. Said state agent selected medical examiners for the company and had authority to solicit insurance and such cashier was empowered by the state agent and by the company. The latter issued policies from its home office though nothing was given for them except said notes. *Held*, the taking of the note and its renewals were within the apparent scope of the state agent's employment, and the company was bound to return said second renewal note or suffer judgment for the amount of said note and obligations.

*Appeal from Marshall District Court.*—HON. D. R. HINDMAN, Judge.

TUESDAY, OCTOBER 22, 1895.

Action on a promissory note. Judgment against defendant Getz and in favor of plaintiff; also judgment in favor of Getz and against the defendant society. Both Getz and the Equitable Life Assurance Society appeal.—*Affirmed.*

*J. L. Carney* for appellant Getz.

*Berryhill & Henry* for appellant Equitable Life Assurance Society.

*J. M. Whittaker* for appellee.

Kinne, J.—I. This action is on a promissory note for two hundred and five dollars, signed by the defendant Getz, dated December 7, 1892, and due six months after date. The petition alleges that Durstine, the payee of the note, guarantied the payment of the same, and sold it before its majority to plaintiff, and that it is its property, and unpaid. This petition the defendant Getz answered, admitting the execution of the note, and denying all other averments of the petition. For an affirmative defense Getz averred that on April 5, 1892, he had executed a note for a like amount to his co-appellant for insurance upon his life, and in connection with it he received the contract giving him a right to renew said note for three years; that the note in suit was given in renewal of said note, dated April 5, 1892; that prior to the maturity of the note sued on he sent a renewal note, with a draft for the accrued interest, with a request that the note in suit be returned to him; that thereafter the cashier of the defendant society acknowledged the receipt of the

note sent, and promised to return the note now in suit, but failed so to do; that the note in this suit had thus been paid. It is also charged in a cross petition filed by Getz against the assurance society that the latter and one Scott, and Durstine its general manager, fraudulently conspired to obtain property from the defendant wrongfully, and that with the acquiescence and connivance of plaintiff such representations were made to him that Note No. 3 was sent to said society in payment of the note sued upon, which was never delivered to Getz; and he charges that the note in suit is in the possession of, and under the control of, said society. Other allegations are made which are not material to a determination of this appeal as between plaintiff and the defendant Getz. Plaintiff, in a reply, denies all allegations of connivance and conspiracy on its part, and denies any knowledge of any acts on part of the society or Durstine to cheat or defraud Getz; avers that it purchased the note sued upon before maturity, and that it paid therefor the face of said note.

II.   The contention of Getz as against the plaintiff is that, if the note sued upon could not be enforced as between Getz and the assurance society because of its payment, then plaintiff cannot recover unless it shows that it purchased the note or received it as collateral security for the payment of money advanced at the time it received the note; that the note was received by it in the usual course of business, without notice of any defense thereto, and before its maturity; and that all of these facts must be established by plaintiff. Counsel, in support of this claim, cites *Lane v. Krekle,* 22 Iowa, 399; *Woodward v. Rodgers,* 31 Iowa, 342; *Bank v. Nelson,* 41 Iowa, 563. The doctrine of these cases is stated in *Bank v. Nelson, supra,* as follows: "The rule is well settled that when fraud or illegality in the

inception of a note is pleaded as a defense in an action thereon, and supported by evidence, the burden of proof is cast upon the plaintiff to show that he gave value for it, and that he is a *bona fide* purchaser before maturity." It is very clear that the facts of the case at bar do not bring it within the rule contended for. There is no claim that there was any fraud in the inception of the note in suit. Getz claims it was given in pursuance of an agreement between him and Durstine, the guarantor. The claimed fraud, if any, arises out of the fact that, as Getz claims, Durstine and the assurance society conspired together to commit a fraud upon him by not surrendering this note, and by keeping the note which he sent them, and he claims that plaintiff acquiesced in that conspiracy. As is said in *Potter v. Young*, 90 Iowa, 138 (57 N. W. Rep. 699): "The rule announced in *Bank v. Nelson*, 41 Iowa, 565, does not apply to this defense. This is not a question where the plaintiffs are bound by the fraud of another in the inception of the note, but whether they were parties to the fraud." The evidence shows that plaintiff purchased the note long before its maturity, and there is nothing to show that it was cognizant of, or a party to, the claimed fraud on the part of Durstine and the assurance society. We discover no reason for disturbing the judgment below which was rendered against Getz and in favor of plaintiff.

III. Getz filed a cross petition in said suit against the assurance society, in which he pleaded that Durstine was the general manager and state agent for Iowa of said society; and, after setting forth the matter already referred to, averred that there was a fraudulent conspiracy to obtain Getz's property wrongfully, and that with the acquiescence and connivance of plaintiff such representations were made to him that note No. 3 was sent to the society in

payment of note No. 2, which was never delivered. He asked that the society and Scott, its cashier, be made parties to the suit, and that an accounting be had of the property in possession of plaintiff to satisfy its claims, if any it had, against Durstine; and that, if any judgment should be rendered against Getz, the society should be made liable to him.   The society answered this petition, admitting that Getz entered into the contract of insurance with it, and denying any payment by him, by note or otherwise, of the premium; denying that Durstine, as agent for it, had any authority to make a contract for the renewal of the note; and averred that if he did so the same was done by him personally, and not as its agent.   It was also averred that the acts of Scott, cashier, were his acts as cashier, for Durstine, and not for the society.   Scott also filed an answer alleging that he was acting as agent for Durstine, and not for the society, and adopted the society's answer to Getz's cross petition.   Durstine made default to the cross petition.

IV.   Counsel for Getz files a motion to strike the assignments of error filed by the assurance society because the same were filed too late, and for other reasons.   We do not deem it necessary to discuss this motion.   The case was tried below as an equitable cause, and will be so disposed of in this court.

V.   The whole controversy as between Getz and the assurance society turns upon the authority of Durstine, the manager of the latter, to take the note from Getz for the insurance premium, and to renew the same.   On the part of the society it is contended that the agreement providing for renewal was signed by Durstine individually; that the notes were executed by Getz to Durstine, and not the society.   In short, it is claimed by the society that Durstine, in what he did in this matter, was acting

outside of his authority, and hence the society is not bound by his acts. We shall not cite or discuss authorities. There is and can be in this case no question as to the law relating to agents. The controversy is as to whether the facts were such as to justify the trial court in holding that the acts done by Durstine, and which are complained of, were authorized by the society. It appears that Durstine was the manager of the society's business for the state of Iowa. Just what authority that conferred upon him is not shown, so far as his contract of employment is concerned, as it was not in evidence. It appears also that Durstine, when he took the first note, receipted in his official capacity for the same upon a blank furnished by the society; that the first note was taken up and the note in suit given at the instance of one Denny, who signed the letter, adding, "Supt. of Agents," that this letter was written upon paper bearing the society's name, and showing that Durstine was its "Manager for Iowa," that Denny was its "Supt. of Agents," and Scott its "Accountant." In further correspondence Scott appeared upon the letter heads as "Cashier," and so signed the letters. This same Scott as "cashier," requests Getz to fill out a new note, and return it, with a check for the interest due, which was done. Scott, as "cashier," acknowledges the receipt of the renewal note, and the draft for interest, and promises that the note now in suit· shall be sent Getz, which was not done. About two weeks later, Scott, as "cashier," in response to Getz's request for the policy he was to have in exchange for the one he originally took out, and for his note, forwards the new policy, and promises to send the note. It also appears that Durstine acted for the company in selecting its medical examiners and authorized Getz to recommend suitable persons therefor in several counties; that he had authority to solicit

applications for insurance for the society. Scott, according to his own testimony, was in the employ of both the society and Durstine. It is shown without conflict that it was the custom of the society to issue receipts for notes when notes were given for premiums, and these receipts were furnished by the society. The policies were issued from the home office in New York. Neither Scott nor Denny in their correspondence with Getz disclosed the fact that they were thus acting for Durstine; on the contrary, the letter heads, and the manner in which the letters were signed, would indicate that they were acting as the agents of the society. It clearly appears that in taking the first note from Getz, Durstine was acting within the scope of his employment. That the society expected him to take notes for insurance premiums is manifest, else why did it furnish him the very printed blanks designed for that purpose? We think, from all the evidence in this case, it may well be said that Durstine, in taking and renewing the notes, acted within the scope of his agency; that he did just what the company expected him to do when necessary to secure risks; and that whatever its formal contract with Durstine may have been is immaterial, inasmuch as from the fact that it furnished him blank receipts to fill out when notes were taken, and as it appears that it in fact issued a policy to Getz without even receiving a cent in cash from him, it is clear that it contemplated he would take and renew notes for premiums as he did. Nor do we deem the fact that he took the notes payable to himself controlling, in view of all of the other facts disclosed in evidence. The society, by its course of dealing, held Durstine out as having authority to do just what he did do. It cannot, after having induced Getz to deal with Durstine under the belief that he had authority to accept notes for premiums of insurance, and after issuing a policy

to him when he paid no cash whatever, be permitted to say that it will not be responsible for the acts which led up to the issuing of the policy, and which it had apparently by its conduct authorized. It is reasonably apparent that, if Durstine had not failed, no question would ever have been made by the society as to his power to do as he did in accepting the note for a premium and in renewing it.

VI. A question is presented as to the right of the court to enter a judgment against the society for the amount of the note and attorney's fees in advance of Getz's having paid anything thereon. We think the court properly rendered a judgment against the society and in favor of Getz on account of the note which it wrongfully refused to return to him. It is not, perhaps, clear from the evidence that the society has in fact parted with its title to and possession of the note, yet it may be claimed that the evidence tends to show that such is the case. If it shall appear that the society still holds such note, we think it should be permitted to deliver it up in satisfaction of the said judgment rendered against it, and the judgment below will be so modified. If, therefore, said society shall, within sixty days from the date of the filing of this opinion, deliver to the clerk of the district court of Marshall county, Iowa, said note for the use of Getz, it shall operate as a satisfaction of said judgment in favor of Getz, including attorney's fees, but not including costs. The costs of this appeal, so far as they apply to the counterclaim of Getz, will be taxed to the appellant society. As modified above, the judgment below is *affirmed.*