## THE BENTON COUNTY SAVINGS BANK OF NORWAY v. BODDICKER, et al.

**Bonds:** WRONGFUL DELIVERY: *Notice to obligee.* Where a bond was delivered by the principal in violation of a condition on which it was signed by the sureties, the obligee may nevertheless recover thereon, if he shows that he was ignorant of the conditions on which the sureties signed, and that he took the bond in good faith, and for sufficient consideration.

*Daniels v. Gower,* 54 Iowa, 319, *overruled.*

SAME. It is error to charge that the obligee of a bond may recover thereon unless he has *express* notice that the bond is being delivered in violation of a condition upon which a surety signed it. It was sufficient notice if obligee had knowledge of such facts as would have caused a person of reasonable prudence to investigate and discover that the delivery was not authorized.

CONSTRUCTION OF: *Future debts.* A bond recited that its purpose was to fully indemnify the obligee from the failure of the principals "to pay their indebtedness no w owing (or which may be contracted hereafter)." *Held,* that the bond besides renewals of existing indebledness, covered future indebtedness, notwithstanding a recital that the condition of the bond was that the principals "shall pay the full amount of their indebtedness."

*Same.* A bond in the sum of five thousand dollars given to secure future indebtedness, does not limit the indebtedness the principal may incur, but only the amount which the bond should secure.

*Consideration.* Where a bond was given to secure future as well as present indebtedness, and new debts were afterwards contracted, and old ones extended, there is a consideration to support it,

although, when it was given, the debts amounted to more than the
amount of the bond.

**Savings Banks:** LOANS: *Construction of statute.* Acts, Fifteenth
General Assembly, chapter 60, section 18, provides that the total
liabilities to a savings bank for money borrowed of it shall at no
time exceed twenty per cent of the capital stock actually paid in.
*Held,*

a This provision is simply a rule to govern the savings bank and it
does not make a larger loan void.

b A bond which agrees to indemnify such bank against the failure
of a debtor to pay present and future *indebtedness,* is not within
the statute. *Indebtedness* may include more than *borrowed money.*

c Where the debt secured by bond may be enforced against the
debtor and the bond was not given for an illegal purpose, the bond
may be enforced.

**Principal and Surety:** FRAUD OF OBLIGEE. Where the surety
inquires of the creditor respecting the principal for information
the creditor may properly give, and the creditor withholds the
same without sufficient cause, or misleads the surety, the creditor
should suffer the loss thereby occasioned.

*Appeal from Benton District Court.*—HON. O. CASWELL,
Judge.

THURSDAY, MAY 19, 1898.

ACTION at law on a bond given to secure the pay-
ment of money. There was a trial by jury, and a verdict
and judgment for the plaintiff. The defendants appeal.
—*Reversed.*

*Heins & Heins* for appellants.

*Tom. H. Milner* for appellee.

ROBINSON, J.—In January, 1881, the plaintiff was
organized as a corporation by virtue of chapter 60 of the
Acts of the Fifteenth General Assembly, for the pur-
pose of transacting business as a savings bank at Nor-
way, in Benton county. Its capital stock, at first but
ten thousand dollars, was, in the year 1887, increased
to fifteen thousand dollars. The firm of G. A. Miller &

Sons was engaged at Norway in selling coal, lumber, and agricultural implements, and borrowed money of the plaintiff. In the first part of the year 1891 the firm was indebted to the plaintiff to the amount of about six thousand dollars, and upon the demand of the plaintiff executed and delivered to it the instrument in suit, of which the following is a copy: "Know all men by these presents that we, G. A. Miller & Sons, as principals and Joseph Boddicker and V. A. Thoman, as sureties, of Benton county, Iowa, are held and firmly bound unto the Benton County Savings Bank of Norway, Benton county, Iowa, in the sum of five thousand ($5,000) dollars, to be paid to the said Benton County Savings Bank or its assigns; to the payment of which we bind ourselves, and each of us, our heirs and legal representatives, firmly by these presents. It is the intention and purpose of this instrument or obligation to fully protect and indemnify the said Benton County Savings Bank or its assigns against any and all losses by reason of the failure of the said G. A. Miller & Sons to pay their indebtedness now owing (or which may be contracted hereafter) to the said Benton County Savings Bank. The condition of the above obligation is such that, if the said G. A. Miller & Sons shall pay the full amount of their indebtedness to the said Benton County Savings Bank, then this obligation to be void and of none effect; otherwise to remain in full force and virtue. G. A. Miller & Sons. Joseph Boddicker. V. A. Thoman." On the thirty-first day of January, 1896, the plaintiff commenced this action against the firm of G. A. Miller & Co. and its members to recover the amount due on certain promissory notes, and against the sureties to recover the amount of the bond. The action was aided by attachment which was issued against the property of the firm and its members. In April, 1896, judgment

was rendered against all the defendants excepting the sureties on the bond, for the sum of fourteen thousand, six hundred and twenty dollars and fifty-five cents, an attorney's fee, and costs, and a special execution was ordered against certain town lots. Thereafter, by order of the court, a separate petition setting out the claims of the plaintiff upon the bond was filed, and to that the sureties Boddicker and Thoman filed an answer. The verdict and judgment against them were for the full amount of the bond.

I. The defendants claim that each of them signed the bond upon the express condition that before it should be delivered and take effect it should also be signed by three other men of good financial responsibility; also that Boddicker signed the bond on that condition, and notified the plaintiff of that fact before the bond was delivered, and that Thoman signed after Boddicker did, and relying upon his signature. There was evidence which tended to support these claims. The court charged the jury that the burden was on the defendants to show that the plaintiff had knowledge or notice of the condition on which the bond was signed, if it was signed on the condition alleged, before it was delivered, or before any credits had been extended or benefits conferred by virtue thereof; and of that portion of the charge the appellants complain. The answer alleges that the plaintiff had the knowledge or notice specified before the bond was delivered, but the appellants insist that upon proof of the fact that the bond was executed on the condition stated a presumption that the plaintiff took the bond with knowledge of the condition was created, and that the burden of rebutting that presumption, and showing that the bond was taken in good faith, was upon the plaintiff. It is a rule of general application that the holder of negotiable paper which is payable to bearer or

is endorsed in blank is presumed to be its *bona fide* owner, but that, when fraud or other illegality in the inception of the paper is shown, the burden is shifted to the holder to show that he acquired and holds it in good faith. *Bank v. Barber*, 56 Iowa, 559, and authorities therein cited; *Bank of Montrose v. Anderson Bros. Min. & Ry. Co.*, 65 Iowa, 692, 701; *Lane v. Krekle*, 22 Iowa, 399; *Bank v. Schloesser*, 101 Iowa, 571; *Bank v. Holan*, 63 Minn. 525 (65 N. W. Rep. 952); *Bank v. Richter*, 55 Minn. 362 (57 N. W. Rep. 61); 1 Am. & Eng. Enc. Law (2d ed.), 369; Tiedeman Commercial Paper, section 303. And when an alteration in an indorser's contract is shown the burden is on the holder of the note to show the sufficiency of the indorsement. *Robinson v. Reed*, 46 Iowa, 219. The rule of these cases applies, notwithstanding the fact that in actions by persons not payees of such paper it is necessary to plead in defense that the plaintiffs are not good-faith holders of the paper in suit. *Lane v. Krekle, supra; Sillyman v. King*, 36 Iowa, 207, 214. These rules have been applied to purchasers of real property whose titles were assailed. *Rush v. Mitchell*, 71 Iowa, 333; *Gardner v. Early*, 72 Iowa, 518; *Merrill v, Tobin*, 82 Iowa, 529; *Sillyman v. King, supra.* In this case there has not been any transfer of the instrument alleged to have been wrongfully delivered, and it is not a negotiable instrument. Therefore, the rules which protect the *bona fide* owners of negotiable instruments are not in all respects applicable. We cannot, however, assent to the claim of the defendants that, if the bond in suit was delivered in violation of an agreement to the effect that it should not be delivered until three additional sureties should sign it, no recovery can be had thereon, even though the plaintiff took it without knowledge or notice of the agreement. The case of *Johnston v. Cole*, 102 Iowa, 109, involved the validity of a contractor's bond, on which

recovery was sought against a surety named Cole. He pleaded as a defense that the bond was not to be delivered unless it should be signed by another surety, and the jury found specially that he did not deliver the bond nor authorize its delivery without the signature of another surety. We held, under the issues tendered and the special finding, that the invalidity of the bond had been established, and called attention to the fact that the issues did not bring in question the legal effect of the delivery made; and that the answer pleaded an affirmative defense, the sufficiency of which was not in any manner questioned. Whether the *bona fide* holder of such a bond might, in any event, be entitled to recover upon it as against the surety who had not authorized its delivery, and upon whom rested the burden of proof as to the good faith of the holder, were questions not decided in that case. In *Daniels v. Gower*, 54 Iowa, 319, a recovery was sought against the sureties on a non-negotiable promissory note. Three of the sureties signed the note when it was in the hands of one Stoller, with the agreement that it should not be delivered unless the signature of one Blajok should be obtained. It was held that if Stoller was not the agent of the plaintiff, and the note was delivered without the knowledge and consent of the three sureties, in violation of the condition upon which it had been placed in the hands of Stoller, the sureties would not be liable. The correctness of that decision was questioned in *Taylor County v. King*, 73 Iowa, 153, and the fact was pointed out that it rested in part upon the supposed authority of *Pepper v. State*, 22 Ind. 399, which has been overruled in *State v. Pepper*, 31 Ind. 76, and in part upon the case of *Ayres v. Milroy*, 53 Mo. 516, which was examined and questioned, if not distinguished, in *State v. Potter*, 63 Mo. 212. The case of *People v. Bostwick*, 32 N. Y. 445, tends to sustain the doctrine of *Daniels v. Gower*, but was questioned in

*Russell v. Freer*, 56 N. Y. 67, although it was cited in *Whitford v. Laidler*, 94 N. Y. 145. In some cases a distinction has been suggested between official bonds and other non-negotiable instruments, based upon grounds of public policy. *Carroll County v. Ruggles*, 69 Iowa, 269; *Taylor County v. King*, 73 Iowa, 153. But, although there are a few authorities which support the rule of *Daniels v. Gower*, the greater number do not. See *Butler v. U. S.*, 21 Wall. 272; *Dair v. Same*, 16 Wall. 1; *White v. Duggan*, 140 Mass. 18 (2 N. E. Rep. 110); *Ordinary v. Thatcher*, 41 N. J. Law, 403; *Quick v. Milligan*, 108 Ind. 419 (9 N. E. Rep. 392); *Russell v. Freer*, 56 N. Y. 67; *State v. Peck*, 53 Me. 284; *State v. Pepper*, 31 Ind. 76; *McCormick v. Bay City*, 23 Mich. 457; *Millett v. Parker*, 2 Metc. (Ky.), 608; *State v. Potter*, 63 Mo. 212, and cases therein cited; *Cutler v. Roberts*, 7 Neb. 4; *Nash v. Fugate*, 32 Grat. 595; *Jordan v. Jordan*, 10 Lea, 124; *Tidball v. Halley*, 48 Cal. 613; *City of Chicago v. Gage*, 95 Ill. 613. The ground upon which some of these decisions are based is that, where sureties have placed in the hands of their principal an instrument which purports to be valid and complete, they are estopped to assert, as against an innocent holder for value, that they did not execute it. In this case, if the testimony for the plaintiff be credible, the defendants executed what purported to be a valid bond, complete excepting that the names of the sureties were not inserted, and intrusted it to the principal. He delivered it wrongfully, it is said, but the plaintiff had no knowledge of that fact, nor of any circumstances which should have caused it to inquire as to the condition on which the bond was signed. We do not think that, in the absence of such knowledge, the plaintiff refrained at its peril from making inquiry as to the signing of the bond. It is a rule of general application that when one of two inno-

cent parties must suffer loss it should fall upon the one whose acts caused it. *Quick v. Milligan, supra.* We reach the conclusion that the doctrine of *Daniels v. Gower,* which we have considered, is contrary to reason and the weight of authority, and so far as the case announces that doctrine it is overruled. If it be shown that the bond was delivered by the principal in violation of the condition on which it was signed by the sureties, nevertheless the plaintiff may recover if it show that it received the bond in good faith, for a sufficient consideration, without knowledge or notice of the condition upon which the defendants signed it.

II.    The defendants state that, being ignorant of the financial standing of G. A. Miller & Sons, they applied to the plaintiff, a short time before this action was commenced, for information, and were then assured by the plaintiff that the firm was solvent, and in good financial condition; that the plaintiff knew that the statements were false; that the defendants believed them to be true, and relied upon them, and in consequence refrained from taking measures to secure themselves which they would have taken but for the false representations made as stated. In view of the fact that what evidence will be given on another trial of this case is uncertain, we content ourselves with saying on this branch of the case that as the contract of suretyship is, as a rule, for the benefit of the creditor, he is, in dealing with the surety, to observe the utmost good faith, and if he fail to do so, without a sufficient excuse for his neglect, the surety will be discharged to the extent to which he suffers by reason of the lack of good faith on the part of the creditor. If the surety applies to the creditor for information respecting the principal which the creditor has, and may properly give, but which he withholds without sufficient cause, or if he knowingly give false information, he, and not

the surety should suffer the loss occasioned by the wrong. See *Bank of Monroe v. Anderson Bros. Min. & Ry. Co.*, 65 Iowa, 692; *Rowley v. Jewett*, 56 Iowa, 492; *Auchampaugh v. Schmidt*, 77 Iowa, 13; *Wolf v. Madden*, 82 Iowa, 114; *Harris v. Brooks*, 21 Pick. 195; Brandt on Suretyship, 611.

II.   The evidence tended to show that the time of paying some of the indebtedness of G. A. Miller & Sons which existed when the bond in suit was given was afterwards extended, and that new indebtedness was thereafter contracted; and it is insisted that the bond does not cover either class of indebtedness. The bond, in terms, covers the indebtedness of the firm which it owed to the plaintiff at the time the bond was given, or which should be thereafter contracted. It is true, the third paragraph of the bond recited that the condition of the bond is that the firm "shall pay the full amount of their indebtedness" to the plaintiff, and that paragraph, taken alone, might well be said to refer only to indebtedness existing when the bond was given; but all the provisions of the bond must be construed together, and when that is done it is clear that the bond was intended to secure the payment of the indebtedness of the firm to the plaintiff which existed at the time the bond was given, and also that which should be created by contract thereafter. The provisions were sufficiently broad to include renewals of existing debts, as well as those which should otherwise accrue, for a continuance of the business of the firm was evidently contemplated, and contracts for the extension of existing debts were as much within the scope and purpose of the bond as were those which should be thereafter created. We do not think that the case of *Crapo v. Brown*, 40 Iowa, 487, nor other authorities cited by the appellants, are in conflict with the conclusion we reach, as

each was made to depend upon the terms of the obligation construed, and none were like the bond in suit.

IV.   It is urged that there was no consideration for the bond, but without sufficient reason.   Although G. A. Miller & Sons were owing more than the amount of the bond when it was given, yet it applied to future as well as to existing indebtedness, and the evidence shows that new debts were contracted after the bond was given.   It is also said that the debts the firm was permitted to incur were largely in excess of the amount permitted by the bond; but that did not purport to limit the amount of indebtedness the principal might incur, but only the amount which the bond should secure.

V.   Section 18 of chapter 60 of the Acts of the Fifteenth General Assembly provides that "the total liabilities to any association of any person, or of any company, corporation, or firm, for money borrowed, including in the liabilities a company or firm, the liabilities of the several members thereof, shall at no time exceed twenty per cent. of the capital stock actually paid in; provided: that the discount of *bona fide* bills of exchange drawn against actually existing value and the discount of commercial or business paper actually owned by the person or persons, corporation or firm negotiating the same shall not be considered money borrowed."   As the capital stock of the plaintiff was but fifteen thousand dollars, the amount of the bond was two thousand dollars in excess of the sum which the plaintiff was authorized to lend to the firm, and the amount of its debts to the plaintiff when this action was commenced was nearly five times that which it was authorized to borrow of the plaintiff.   It is argued that the firm and the plaintiff violated the law in creating the debt, and that the sureties are thereby discharged.   It is true that every

contract must be construed with respect to the law applicable to it, and that contracts in violation of law are void; but it does not appear that the bond was designed to accomplish or to promote an illegal purpose. It was not restricted to indebtedness which should have been or should be thereafter incurred for borrowed money, and the prohibition of the statute is against liabilities for money borrowed. It will be noticed that the statute does not make a loan of money in excess of the per centum named void, and the general rule applicable to loans of that character is that they are not void, the prohibition of the statute being intended as a rule for the government of the bank. *Union Gold Min. Co. v. Rocky Mountain Nat. Bank*, 96 U. S. 640; *Bank v. Perry*, 72 Iowa, 15; *Pangborn v. Westlake*, 36 Iowa, 546; *Bank v. Slemmons*, 34 Ohio St. 142; *Bank v. Savery*, 82 N. Y. 291; *Duncombe v. Railroad Co.*, 84 N. Y., 190; *O'Hare v. Bank*, 77 Pa. St. 96; *Bank v. Fall*, 71 Me. 49; 27 Am. & Eng. Enc. Law, 380, 381. Since it does not appear that the bond was given for an illegal purpose, and the plaintiff can enforce as against G. A. Miller & Sons the full amount of their debts, we are of the opinion that the defendants may be liable in this action for the full amount of the bond in suit.

VI. The twelfth paragraph of the charge given by the court in effect authorized the jury to find for the plaintiff, even though the bond was delivered in violation of the condition on which it was signed by the defendants, if the plaintiff did not have "express notice" that its delivery was unauthorized. We think that in giving that portion of the charge the court erred. If the bond was delivered in violation of the condition on which the defendants signed it, knowledge of such facts as would have caused a person of reasonable prudence to investigate and discover that the delivery was not authorized would have been sufficient

to charge the plaintiff with notice that the bond was illegal. The conclusions we have expressed dispose of the controlling questions presented for our consideration and of those which are likely to arise on another trial. For the errors which we have pointed out, the judgment of the district court is REVERSED.