YELLOW MEDICINE COUNTY BANK *vs.* T. N. WIGER *et al.*

Submitted on brief by appellant, argued by respondent, Nov. 14, 1894. Reversed in part Dec. 12, 1894.

No. 9181.

**Note procured by fraud practiced on some of the makers, held valid as to others who did not defend.**

A large number of persons signed a paper upon which the plaintiff brought an action against all of them, alleging it to be a negotiable promissory note, of which he was the assignee; and upon the trial the plaintiff produced a note, and proved the signatures to the note to be genuine as to many of them, while several of the defendants denied the genuineness of their signatures; the defense interposed in the defendants' answer being allegations of fraud on the part of the payee in the note, and that he represented it to be a blank book for their subscriptions in taking shares in the purchase of a stallion, and that the paper signed by them was concealed by means of a false cover or paper placed over the book, whereby their signatures were thus obtained by false and fraudulent means and representations. Upon the trial, four of the defendants did not appear or give any testimony as to their being misled or deceived in signing the paper or note which plaintiff had proven to be a negotiable promissory note, with their genuine signatures attached. *Held*, that it was error for the jury to find a verdict in their behalf.

It also appeared that one of the defendants who signed the note did not then know that it was a note, he being the second person who signed it; but it did conclusively appear that, shortly after he signed it, he was informed that it was a promissory note, and thereafter he went around with the payee in the note, and saw him get additional signatures to it. *Held*, that the plaintiff being a purchaser of the note, before maturity in good faith and for value, was entitled to a verdict as against such defendant.

**Negligence of the makers a question for the jury.**

*Held*, also, that the question of negligence upon the part of some of the other defendants in affixing their signatures to the note was one for the jury to determine, under Laws 1883, ch. 114; also, that it was a question of fact for the jury as to whether the remaining defendants ever signed the note.

Canty, J., dissenting.

Appeal by plaintiff, the Yellow Medicine County Bank, from an order of the District Court of Becker County, *D. B. Searle*, J., made July 21, 1894, denying its motion for a new trial after verdict for all of the eighteen defendants.

The plaintiff's third assignment of error mentioned in the opinion was as follows:

Third. The court erred in overruling plaintiff's objections to the evidence of divers defendants to the effect that subsequent to the execution of the note sued upon they settled their liability by the execution of their individual notes.

*W. B. Douglass*, for appellant.

*H. Steenerson*, for respondents.

Buck, J.    It is alleged in the complaint that the defendants, on the 11th day of January, A. D. 1892, made and delivered their promissory note to one Byron S. Fryor, whereby they promised, for a valuable consideration, to pay him the sum of $2,000 in three installments, as follows:    $600, January 11, 1893; $700, January 11, 1894; and $700, January 11, 1895,—with interest at eight per cent. per annum, payable annually; and that the payee, Byron S. Fryor, indorsed, sold, and delivered said note to plaintiff, before maturity, for value, in the usual and ordinary course of business, and the plaintiff afterwards sold the note to the Cedar Rapids National Bank, but that defendants refused to pay the same, and thereupon the note was transferred back to plaintiff; and that it was the owner and holder thereof at the time of the commencement of this action.

The action is to recover the first installment of $600, and interest due on the whole note.    The defendants denied the execution of the note, and denied that it was transferred to plaintiff, as alleged

in its complaint. It is alleged in the answer that the payee in the note, Byron S. Fryor, about the 11th day of January, 1892, came to the defendants, and represented that he was selling shares in a certain horse, which shares were to be twenty in number, of $100 each, par value, and that he was anxious to get subscribers to such shares, and he thereupon produced a book, which appeared to be a blank book, with blank places for subscribers to sign their names, and to set opposite each name the number of shares subscribed for, and that, if sufficient names were not subscribed to dispose of said horse, said subscription should not be binding, and thereupon the defendants, except E. M. Dyredal, signed their names in said book so presented, believing that the same was a subscription list of shares in said horse; that, at the time of such signing, there appeared no promissory note or other obligation to pay money upon said book; and that, in subscribing such subscription list, they exercised all their faculties to ascertain the contents of said instrument, and were not guilty of any negligence on their part in signing the same, but that they are informed and verily believe that, at the time of such signing, the said Byron S. Fryor fraudulently concealed from these defendants, by means of a false cover or paper placed over the same, the pretended note set out in the complaint; and that their signatures were obtained by the false and fraudulent representations as to the nature and contents of said instrument which they signed; and that their signatures were affixed to said paper without fault or negligence of the defendants, they not knowing that the same was a negotiable instrument under the law merchant, but supposing that the same was a subscription book for shares in said horse; and that no such instrument as set out in the complaint, nor any note or negotiable instrument whatever, appeared upon the paper which they signed, or in the book containing the subscription list. The plaintiff replied, and issue was joined upon the material allegations in the pleadings.

Upon the trial, several of the defendants positively denied the genuineness of their signatures to the instrument or note, while several others substantially admitted the genuineness of their signatures, but claimed that they either signed a blank page in a small book, or that the note was in some unknown manner turned over or covered up at the time of such signing. The defendant Dyredal, in his answer,

denied signing the note.    The jury found a verdict in favor of all the defendants.

Four of the defendants, John Gratten, Ole Benson, Andrew Haiby, and P. E. Bjorge, did not appear on the trial, nor did they give any testimony upon the matter in controversy.    The plaintiff proved their signatures to the note, and that it was a purchaser in good faith and for value before maturity, and the burden of proving that they were deceived, misled, or were not guilty of negligence in signing the note then rested upon them.    But they negligently or intentionally omitted to make any such defense.    That others testified that, as to themselves, they were misled or deceived, and that they were not guilty of any negligence, is no defense or excuse for these four defendants. They ought to have explained the existence of their signatures upon the note, and to have shown by evidence that they exercised reasonable care in affixing their signatures to an instrument *prima facie* negotiable.    It would be a dangerous precedent in mercantile business to allow the signers of such instruments to escape liability when they do not offer or make any defense upon the trial of such issues as are here presented that they were deceived or misled, or that they exercised reasonable care in such case.    No excuse is given why they did not appear, and as against them the plaintiff was entitled to a verdict.

The plaintiff also contends that the defendant C. H. Knudson was clearly guilty of negligence, after learning that he had signed a negotiable note, in permitting it to remain outstanding, and in seeing other signers attach their names after he knew it was a promissory note.    He testified that Fryor, the payee of the note, came to him, and wanted him to take a share for the purchase of the horse, and that Fryor had a book, and wanted him to sign an order for a share, and that he looked at the book, but that he never looked to see whether there was any note or not, but that he did not see any note when he signed, and that, while he looked at the paper, he did not see any written or printed words there, and that he did not take any particular pains to see whether there were such words there; that he thought he was signing an order for the purchase of a horse, but that he paid no attention to the heading of the instrument, and did not try to read it, and did not know it was a note he was signing.    He testifies, however, that, a few days after he signed the paper, it was hinted to him by Mr. Fryor and a Mr. Bilbin, who was with Fryor, that it was a note,

and that he mistrusted that it was a note. This was when Knudson was going around with Fryor and Bilbin to get signatures to the paper, Knudson being the second person who signed the note or paper. Knudson also testifies that he saw parties signing the paper after the time that he had been told by Tom that the paper was a note, referring, as we understand the evidence, to Tom Bilbin, who was also accompanying Fryor to get signatures to the note. Those whom he testified that he saw signing the note were Helge Klemmetson and Elling Klemmetson, after he knew it was a note, and that he went around with Bilbin to get other signatures after he knew that the paper was a note, although he did not see others put their signatures to the paper, and he saw Bilbin show it to different persons while he was going around with him. There is no other material evidence to contradict or explain this knowledge or conduct on the part of Knudson, but there is considerable evidence tending to show his conduct or influence in inducing the subsequent signers to attach their names to the paper after he knew it was a note. It needs no argument or reasoning to show the liability of this defendant Knudson, and it seems a perversion of justice that a verdict should have been rendered in his favor. Clearly, the plaintiff was entitled to a verdict against him upon his own evidence.

The record presents a very unsatisfactory case as to the vendors and the purchasers of the horse. The original record returned to this court contains a book which is identically the same as the original book from which the note in suit was taken. This book opens at the end, and upon one page is a blank memorandum of agreement for the formation of a stock company for the purpose of purchasing a stallion, shares to be $100 each, and various other blanks as to the purchasers giving their joint note, name of horse, and that the vendor will be bound to perform and liable for certain conditions therein specified. Upon the other page of the book, and close up to the page referred to, is a leaf upon which is printed a blank form of a negotiable note, with a large number of perforations between the note and the memorandum of agreement on the other page, apparently forming one instrument, but, by reason of the perforations, the note is easily detached. These perforations are so far back in the joint of the book as not to be readily or easily seen. By pressing the leaf upon which the blank note appears about two

inches over the memorandum of agreement, which is easily done, the note becomes entirely hidden, and only part of the memorandum appears, but there is still left below the note and on the same leaf with it sufficient space with marked lines for twenty signatures.

It was in regard to a book similar to this that the controversy arose in this action. Some of the defendants absolutely denied the genuineness of their signatures, and, if they did not sign, of course, as against them, there could be no recovery. Others admitted their signatures, but claimed that they did not see or sign a note, but only signed a paper to show the number of shares which they would take in the purchase of a stallion. These questions as to the genuineness of the signatures and the question of negligence in signing the paper were left to the jury, and a verdict rendered for defendants. The question of negligence was submitted by the court under Laws 1883, ch. 114, as a matter of fact for the jury to determine.

Under the facts and circumstances appearing in this case, the court committed no error in so doing. Of course, we do not assert the right of the court to submit to the jury the liability of the defendant Knudson, nor the four defendants who did not appear as the case stood at the close of the testimony on the trial. It may not be irrelevant for us to say here that the payee of the note, Fryor, did not appear as a witness on the trial of the action.

In the first assignment of error the plaintiff claims that the court erred in overruling its objection to the question put to the witness Thomas A. Bilbin in his cross-examination as to the notes made subsequent to the execution of the one in controversy, and in particular to the note made by N. P. Jensen. The record shows that the question put was not as to how many notes, but as to how many signatures, he saw N. P. Jensen make. This, under the circumstances of the case, was not erroneous. The answer was immaterial, and could not have prejudiced the plaintiff's right; and, if it was not responsive, then plaintiff should have moved the court to strike it out.

The plaintiff makes the point that the court erred in overruling its motion to strike out the evidence of the witness N. P. Jensen to the effect that, after signing the note in question, he, at a subsequent date settled for the shares he purchased. The objection to that evidence was that it was incompetent, irrelevant, and immaterial; but this was

competent, relevant, and material evidence in a case of this kind if the facts had been pleaded, but it was not objected to upon that ground.

The third assignment of error is so general and uncertain that we do not feel that it is our duty to hunt through a long record to find what "divers defendants" are referred to by counsel, even if we could find them at all.

We find no other errors than those referred to in this opinion, and the result is that the order denying the motion for a new trial is affirmed as to all of the defendants except the defendants John Gratten, Ole Benson, Andrew Haiby, P. E. Bjorge, and C. H. Knudson, and as to these defendants the order is reversed.

GILFILLAN, C. J., absent on account of sickness, took no part.

CANTY, J. I dissent from the foregoing opinion so far as it holds that the order appealed from should be reversed as to any of the defendants. It appears by the return that the alleged note, when signed, was a leaf in a book. This book opens at the end, and its pages are about seven inches long by five inches wide. Printed on the top page is a blank contract for the purchase of a stud horse. There are no blanks for either date or signature on this page, but the last printed line is close to the bottom of the page, near to and parallel with the seam or stitching which fastens the pages together. On the top of the bottom page is a blank form of a promissory note, commencing with the date, and following it are two columns of twelve ruled lines in each column for signatures, giving it the appearance of a blank subscription list. There is nothing about the style or form that indicates that each page is intended for a separate contract, but both pages together appear to be one continuous contract, with the peculiarity that the date is in the middle, instead of being at the beginning or end. The top of the bottom page is perforated so close to the stitching that the stitches barely miss passing through the perforations, which cannot be seen except by pressing the book open with some force.

The evidence tends strongly, if not conclusively, to show that the signatures were placed in this double blank column while both the pages were in the book, and the lower page was afterwards torn out, and uttered as a promissory note.

To say the least, it was a question for the jury whether or not the contract of the parties, the contract agreed upon, the contract signed and intended to be signed, included the written and printed matter on both pages. If it did, the case does not come within Laws 1883, ch. 114, at all, and the question of negligence under that statute is not in the case. That statute applies only to a case where the party signed a negotiable instrument supposing it to be something else, not to a case where the party signed something else supposing it to be what it in fact was. The majority opinion assumes that the instrument in fact signed was a promissory note, while the evidence is exceedingly strong to show that it was not, but was the instrument expressed by both pages.

The evidence tends strongly to show that the whole transaction is a fraudulent scheme, intended to be carried out by forgery, and that it was so carried out. If the contract in fact made and signed included both pages, it was a forgery afterwards to cut this contract in two, and utter one part of it. It was a material and fraudulent alteration of the contract, which made it void in the hands of an innocent purchaser. Both of these defenses were available under the denial in the answers that the defendants ever made the note set out in the complaint.

Being unexplained, it is a strong circumstance against four of the defendants that they failed to testify in their own behalf. But the other evidence in the case made a strong defense for them, which was not overborne by such failure, but such failure was a question for the jury to consider. It seems to me that there is sufficient evidence to sustain the verdict as to all the defendants.

(Opinion published 61 N. W. 452.)