|    |    |
|----|----|
| 63 | 525 |
| 84 | 34 |

FIRST NATIONAL BANK OF DECORAH v. PEDER J. HOLAN and Others.[1]

January 27, 1896.

Nos. 9755—(259).

**Directing Verdict against Several Defendants.**

A motion to direct a verdict in favor of the plaintiff against all of several defendants is properly denied where he is entitled to a verdict only against some of the defendants.

**Expression of Opinion on Facts by Judge.**

The trial court ought, as a general rule, to refrain from expressing any opinion in his instructions to the jury upon any disputed question of fact, but in a civil case it is not error to do so provided the question is fairly left to the jury for their decision.

**Promissory Note—Fraud—Ratification.**

The mere promise to pay, or the procuring an extension of the time for paying, a promissory note obtained from a party without his fault, by fraud and artifice, and which he is under no legal or moral obligation to pay, does not, as a matter of law, constitute a ratification of the note, in the absence of any facts creating an estoppel in pais.

**Same—Negligence.**

Evidence considered, and *held*, that the question of the negligence of the defendants in signing their names to a paper in the belief that they were signing for shares in a company to be formed for the purchase of a horse was, under G. S. 1894, § 2239, one for the jury.

**Same—Bona Fide Holder.**

Certain instructions to the jury, as to what must be shown by the indorsee of a promissory note, obtained from the maker by fraud and artifice, in order to establish his claim that he is a bona fide holder within the law merchant, considered, and *held* to be correct.

Appeal by plaintiff from an order of the district court for Marshall county, Ives, J., denying a motion for a new trial. Affirmed.

*A. A. Miller*, for appellant.

*H. Steenerson* and *A. Grindeland*, for respondents.

START, C. J.    Action upon a joint and several negotiable promissory note. Verdict for the defendants, and the plaintiff appealed

[1] Reported in 65 N. W. 952.

from an order denying its motion for a new trial as to all of the defendants.

The first paragraph of the complaint alleges the corporate capacity of the plaintiff, the second that on April 10, 1891, the defendants, 16 in number, made and delivered their promissory note, dated on that day, to Kingsland Brothers, and thereby promised, for value received, to pay to them or order $2,000,—$500 thereof on May 1, 1892; $700 on May 1, 1893, and $800 on May 1, 1894, with interest at 8 per cent. a year, payable annually; the third, that prior to its maturity the note was duly indorsed by Kingsland Brothers to Rollins, Perry & Co.; and the fourth, that prior to its maturity the note was duly indorsed by them to the plaintiff.

The answer admitted the first and second paragraphs of the complaint, and put in issue the alleged transfers of the note. It also alleged, in substance, that none of the defendants ever knowingly or intentionally signed the note in question, and, further, that the agent of Kingsland Brothers, one Preston, represented to each of the defendants that he was selling for them shares in a certain stallion, which were to be 20 in number, and of the par value of $100, and presented to them what appeared to be a blank subscription book, and requested them to subscribe for shares in the horse by signing their names in this book, which they did, believing it to be a subscription list; that at the time the defendants so signed their names in such book no promissory note or obligation to pay money appeared therein, and, if such a note now appears over their signatures, it has been written in since they so signed their names, and is a forgery; that the defendants were not guilty of any negligence in so signing their names in such subscription book. The answer also alleged: "That the exact means, tricks, and artifices whereby the true nature and contents of the instrument set out in the complaint, if the same appears as set forth over the signatures of these defendants, were concealed from the defendants at the time of affixing their signatures to the said paper, are unknown; but these defendants allege that, at the time of signing what appeared to be a subscription list for shares in said stallion, no such instrument as is set out in the complaint, nor any note or instrument, negotiable or otherwise, appeared upon the paper which was signed, nor in the book containing said subscription list; and

that the instrument set out in the complaint, if the same now appears over the signatures of these defendants, is a forgery, and is void." The reply put in issue the new matter in the answer.

It is to be noted that the answer admits the execution and delivery of the note by admitting the second paragraph of the complaint, but the record shows that the case was tried without objection and submitted to the jury upon the issues tendered by the special matters alleged in the answer. This admission, and these special matters, are inconsistent, if literally construed, but, in view of the practical construction given the answer upon the trial, it must be held that the special allegations limit the admission to the genuineness of the signatures to the note. Five of the defendants did not appear at the trial or testify in the case, nor was any evidence offered on behalf of any of them as to how their signatures to the note were obtained. Each of the other defendants testified at the trial, and severally gave evidence tending to support the special allegations of the answer, and gave evidence to the effect that he signed his name in a subscription book for a share in the horse, and in no other way, or for any other purpose. The subscription book in which the defendants wrote their names is similar to the subscription book described in the opinion of the court in the case of Yellow Med. Co. Bank v. Wiger, 59 Minn. 384, 61 N. W. 452, but the precise trick or artifice whereby what the defendants testify was a blank leaf of the subscription book, upon which they signed their names, became the promissory note here in question, the evidence does not disclose. The evidence of the defendants as to how and the purpose for which they signed their names is not contradicted, and there is no assignment of error that the verdict is not justified by the evidence.

1. The plaintiff's first assignment of error is that the court erred in denying the plaintiff's motion at the close of the evidence to direct a verdict for the plaintiff. The motion was in these words: "Plaintiff at this time asks the court to direct a verdict in favor of the plaintiff for the amount claimed in the summons." The plaintiff claims that in any event it was entitled to a verdict against the five defendants who did not appear upon the trial or offer any evidence in support of their defense. Conceding such to be the case, without so deciding, still the motion was that a verdict be

directed against all of the defendants. If the plaintiff was not, as a matter of law, entitled, upon the evidence, to a verdict against all of the defendants, the court correctly denied the motion. It was not so entitled.

The evidence of the 11 defendants who testified at the trial tends to show that they never made or delivered the note in question, but that they signed what they understood to be a subscription for a share in the horse; and that over their names, so signed without any purpose of executing a promissory note, there now appears this note. How this transformation was wrought, whether by forgery in detaching a material part of a subscription contract so as to leave the remainder of it a promissory note, or in concealing from defendants by some fraud, trick, or artifice the contents of the note, does not clearly appear from the evidence. But it is clear, if the testimony of the defendants is to be accepted as true, that the instrument produced on the trial, although the genuine signatures of the defendants are attached to it, was never their note or contract, unless they have ratified it since they learned of its existence. Therefore, taking the most favorable view of the evidence for the plaintiff, it shows that the defendants' signatures were obtained by fraud, trick, or artifice; and the case falls within the provisions of G. S. 1894, § 2239. The question of the defendants' negligence in the premises was, under the evidence, a question for the jury.

It is urged by the plaintiff that the instruction should have been given, because the defendants ratified and confirmed the note after being informed of its existence. This question of ratification will be referred to again, as we proceed, and it is only necessary to say, with reference to the question we are now considering, that the evidence does not conclusively show that all of the defendants participated in the acts and conduct relied upon by the plaintiff to constitute a ratification, and that no reasonable view of the evidence would justify the court in holding as a conclusion of law that all of the defendants (if any of them did) ratified the making of the note. It is even doubtful if, as against all of the defendants, the evidence justified the submission to the jury of the question of ratification as one of fact.

2. The second assignment of error is that the court erred in instructing the jury to the effect that they might, in connection with the signing of the paper or subscription book which they admit signing, take into consideration the difference between the agent, Preston, and the person who accompanied him, the defendant Holan, and the other defendants, who were farmers, and who probably never had a suspicion of fraud or guile in their hearts.

This instruction is not to be commended, and such seems to have been the conclusion of the trial judge upon reflection, for subsequently he attempted to withdraw this part of the charge upon the suggestion of counsel for the defendants, and instructed the jury that the part of his charge wherein he had stated to them that they might take into consideration the difference in the circumstances of the parties referred to was withdrawn. If the agent and the defendant Holan had testified in the case, and their evidence had conflicted with that of the other defendants, the instruction would have been prejudicial error, although it was subsequently withdrawn, for it might fairly have been understood as a reflection upon the former and a commendation of the latter. But neither the agent nor Holan was a witness. The evidence of the other defendants was uncontradicted, and it is manifest that the instruction was harmless error. If the instruction is to be construed as a suggestion of an opinion upon the question of the defendants' negligence in signing their names to the book or paper, still the fact remains that the court fully and fairly left this question to the jury as one of fact for them to decide. While, as a general rule, the trial court ought to refrain from expressing any opinion upon a disputed question of fact, yet in a civil case it is not error to do so, provided the question is fairly left to the jury for their decision. Ames v. Cannon River Mnfg. Co., 27 Minn. 245, 6 N. W. 787.

3. The plaintiff's assignments of error 3 to 6, inclusive, relate to the question of ratification of the note by the defendants, and are based upon the refusal of the court to give the plaintiff's requests for instructions 4 to 7, inclusive. There was no exception to the refusal to give the seventh request, which seems to be practically covered by the other requests which were refused, and an exception duly taken. However this may be we can only consider the

63 M.—34

requests to which an exception was taken. They are in these words:

"(4) If the defendants, after signing the note in suit, afterwards learned or were informed that it was in fact a promissory note, and after such knowledge accepted the horse, and kept and used him, they ratified the contract, and your verdict must be for the plaintiff.

"(5) If the defendants, or any of them, after learning that the contract signed was in fact a promissory note, agreed to pay the same, or sought and obtained an extension of the time of payment, they thereby ratified the contract, and your verdict must be for the plaintiff and against the defendants so ratifying it.

"(6) If, after they knew the contract sued upon was a promissory note, the defendants organized a company for the purpose of caring for the horse and paying the notes, and had officers for that purpose, and such officer or officers asked for an extension of time to pay the note, such an action was a waiver of the fraud, and your verdict must be for the plaintiff."

Each of these requests was properly refused. It is claimed on behalf of the defendants that the note, in legal effect, is a forgery, and could not be ratified. Such is the rule where the holder of a forged instrument is connected with the forgery, but whether the rule applies where the instrument is held by an innocent third party is an open question in this state. Wilson v. Hayes, 40 Minn. 531, 42 N. W. 467. The view which we take of the requests under consideration renders it unnecessary to discuss or decide this question, for our conclusion that they were properly denied is based upon the concession that the note in question was not a forgery in the popular sense of the term, but that it was (as the jury must have found) obtained from the defendants by fraud and artifice; that they never signed or delivered it as a promissory note, but as a subscription for shares in the horse or in a company to be formed to buy him, believing and intending it to be such, with no knowledge that it was otherwise. It was, therefore, not their note, and they were under no legal or moral obligation to pay it. Schaller v. Borger, 47 Minn. 357, 50 N. W. 247. Such being the case, the facts assumed in the requests, so far as there is any evidence in the record tending to support them, would not, as a matter of law, con-

stitute an adoption or ratification of the note by the defendants. It is to be noted that the requests do not ask to have the jury told that such facts would be evidence tending to show a ratification, but that they would constitute a ratification. If the requests are read in the light of these suggestions and the undisputed evidence as to what the defendants did in reference to the horse, it is patent that they were correctly refused.

There is no evidence in the case to support the assumption of fact in the sixth request that the defendants organized a company for the purpose of paying the note, and this much of the request must be disregarded. The fact that after the defendants learned that what they had signed, in the belief that it was a subscription for shares in the horse, was in fact a promissory note, accepted the horse, kept and used him, and organized a company for the purpose of caring for him, and paying for him for that matter, would not, as a matter of law, constitute a ratification of the note. If the defendants had been sued upon a subscription contract for shares in the horse, or for his value upon an alleged sale, such fact would probably be a ratification of such contract or sale; but we do not so decide. Neither would the mere fact that the defendants, after learning of its existence, agreed to pay the note, or that they, or the officers of their company, sought and obtained an extension of the time of its payment, alone constitute a ratification, for a naked promise to pay a note which the promisor is under no obligation, legal or moral, to pay, is without consideration. To constitute a ratification of the void note, there must be, in addition to the naked promise to pay it, or the mere procuring of an extension of the time of payment, some facts or circumstances constituting an estoppel in pais.

4. The seventh alleged error is that the court erred in charging the jury as follows: "He must ordinarily show under what circumstances and for what value he became the holder. The reason of this rule is, where there is fraud, the presumption is, he who is guilty of it will part with the note thereby acquired for the purpose of enabling some third party to recover on it. Such presumption operates against the holder, and suspicion follows the note into his hands, and fastens to his title." This instruction was given in connection with an instruction to the effect that, if the jury

found that the note was obtained by fraud and artifice, the burden of proof would shift to the plaintiff to show that it took the note in good faith, before maturity, in the regular course of business. The instruction was correct.   Bank v. Richter, 55 Minn. 362, 57 N. W. 61.

5. The eighth alleged error is based upon the following instruction: "Although it appears that plaintiff did not actually buy the note until March 28, 1893, long after it was due, unless Rollins, Perry & Co. had a good title, as before explained, the plaintiff could not get such a title, for the note was then dishonored by being overdue and unpaid." The evidence justifies this instruction.   Mr. Perry, of the firm of Rollins, Perry & Co., testified that his firm purchased the note April 25, 1891, and on the same day deposited it with the plaintiff as collateral security, and on March 28, 1893,—nearly a year after the first instalment of $500 was due, —it was sold to the plaintiff, and his firm was given credit on its account for $2,199.15, the full amount of the note.   The plaintiff's president testified that the note came into the hands of the bank some months prior to March, 1892, as collateral security for $540, and on March 28, 1893, the bank advanced to the firm the balance due and remaining unpaid on the note; in all, the sum of $2,199.15. There is only one reasonable inference to be drawn from this evidence, which is uncontradicted, and that is that the $540 for which the note was originally held as collateral was paid prior to the sale of the note on March 28, 1893, when it was dishonored.

The ninth assignment of error is that the court erred in instructing the jury as follows: "The deposition does not give the details of the transaction, nor does it state which member of the firm of Rollins, Perry & Co. negotiated the purchase from Kingsland Brothers.   It is incumbent on the plaintiff to show want of notice of the fraud in the inception of the note as to all the members of the firm of Rollins, Perry & Co., unless they show that some particular member or members of the firm had exclusive charge of that transaction."   The firm of Rollins, Perry & Co., at the time they purchased the note of Kingsland Brothers, consisted of J. C. Rollins, A. M. Perry, and George Q. Gardner.   The latter was not living at the time of the trial.   Rollins and Perry, whose depositions were taken, each testified that the firm purchased the note of Kings-

land Brothers before its maturity, for full value, and each stated that he had no notice of any infirmity in or defense to the note, but each fails to give the details of the purchase by stating who acted: for the firm in the purchase of the note. If Gardner had nothing: to do with the purchase of the note, or if either Rollins or Perry had exclusive charge of the transaction, it would have been an easy matter for them to have so testified, and thereby show that Gardner had no notice of any infirmity in the note. The evidence justifies the instruction complained of. Bank v. Richter, 55 Minn. 362, 57 N. W. 61.

6. The tenth assignment of error is that the court erred in charging the jury, in effect, that, if the defendants did not intend to sign the note in question, or any obligation, but intended only to sign their names to a paper for the purpose of taking shares in: a stallion, and they carefully examined the paper before signing, and found no note or obligation attached thereto, or heading or blank space which could conveniently be filled up as a note or obligation, they would not be guilty of negligence, and might avail themselves of their defense. This was given in connection with other proper instructions as to the legal rights of the respective parties in case the jury found that the defendants' signatures to the note were obtained by trick or artifice.

The precise objection to this instruction urged by the plaintiff is that it in effect instructs the jury that they may find that the defendants never executed the note in question; and that this was error, because the answer admits the execution of the note, and there was no such issue in the case. This objection is not tenable, for the reason already stated by us in construing the answer. That the plaintiff on the trial did understand that there was such an issue, and conceded it, is plain from the fact that the court, upon its request, gave the following instruction: "In order to maintain the defense in this case, the defendants must make it appear by a preponderance of the evidence that their signatures to the note sued on were obtained by fraudulent representation, trick, or artifice as to the signatures and terms of the contract, and also that they did not know they were signing a negotiable note; and they must also show that they were not guilty of negligence in signing it without a knowledge of its terms."

7. The last assignment of error is in these words: "Eleventh. The court erred in denying plaintiff's motion to set aside the verdict and grant a new trial." This is insufficient for any purpose. Selover v. Bryant, 54 Minn. 434, 56 N. W. 58.

Order affirmed.

CANTY, J. I concur in the result in this case, but in nothing else. I am of the opinion that there are errors in the charge which must lead to a reversal, unless they are errors without prejudice. The part of the court's charge giving the defendants a certificate of innocence and character by stating that they are farmers, who probably never had a suspicion of fraud or guile in their hearts, was error of a kind which is not to be cured by a subsequent withdrawal of that part of the charge. Unless it conclusively appears that the transaction was nothing more than a case of mere fraud which is capable of being cured by ratification, it was also error to refuse plaintiff's sixth request to charge. But it is my opinion that a verdict should have been ordered for defendants on the evidence, for the reason that it conclusively appeared that the instrument sued on was a forgery. A subscription book was produced on the trial, precisely similar in form and contents to the one described in my dissenting opinion in Yellow Med. Co. Bank v. Wiger, 59 Minn. 384, 390, 61 N. W. 454, except that "Kingsland Brothers" was the name printed in the book as owners of the stud horse which they agreed to sell and the subscribers agreed to buy. It was admitted on the trial by all parties that the subscription book so produced is similar to the one in which the defendants wrote the signatures which now appear on the instrument in suit. What I said in that case applies to this, except that here it conclusively appears by plaintiff's admission that the instrument in suit is not the instrument that was signed. It seems to me that the effect of plaintiff's admission is that it is suing on an instrument which is as cheeky a piece of forgery as was ever brought into a court. Such an instrument is incapable of ratification, and the assignee of it has no more rights than the forger himself. Therefore a verdict ought to have been ordered for defendants, and the errors in the charge are errors without prejudice.